(42 App. Div. 462.)

SHEPARD et al. v. DAVIS et al.

(Supreme Court, Appellate Division, Fourth Department.   July 18, 1899.)

1. INSURANCE AGENTS—NEGLIGENCE—LIABILITIES.

In an action against insurance agents to recover for negligence in placing plaintiff's insurance, where the evidence was conflicting the question of negligence was for the jury.

2. WEIGHT OF EVIDENCE—INTERESTED PARTIES.

Where the evidence is conflicting, an instruction that the evidence of a partner of the defendants, who is interested in the litigation, as well as the evidence of the plaintiffs, is to be tested by the circumstances and probabilities to determine to which the jury shall give credit in disposing of the disputed questions, is proper.

3. INSURANCE AGENTS—LIABILITIES—INSOLVENT COMPANIES.

Where plaintiffs authorize defendants, as insurance agents, to procure for them outside insurance, and they do so, and exercise reasonable care in the selection of the outside company, they cannot be held liable where such company proves insolvent, providing they comply with the obligations imposed by law authorizing them to place insurance in outside companies.

4. SAME—OUTSIDE COMPANIES—FAILURE TO PROCURE LICENSE.

Under 2 Sess. Laws 1892, p. 1991, § 137, providing for a license to be taken out by agents procuring insurance in corporations not authorized to do business in the state, as amended by chapter 611 of the Laws of 1894, where agents obtain outside insurance for a client, under a contract for valid insurance, without complying with such statute and obtaining such license, they do not procure and deliver to their clients valid policies in accordance with their contract.

5. SAME—INSOLVENCY OF COMPANIES.

Where insurance agents undertake to procure policies for plaintiffs, they are bound to ascertain the responsibility of the companies issuing the policies, and to exercise reasonable diligence, and to make inquiries as to the companies whose policies they propose to deliver.

6. ESTOPPEL.

The fact that plaintiffs, having procured a number of policies of insurance from defendants, their agents, after a fire paid the premiums on all such policies, including that of a company which afterwards proved insolvent, did not estop them from seeking to recover from their agents for failing to furnish them with reliable insurance, though at the time of such payment they had been informed by an insurance adjuster that the policy was worthless.

Appeal from trial term, Erie county.

Action by Charles G. Shepard and Walter J. Shepard against Townsend Davis and others.   Verdict for the plaintiffs for $2,768.56. Defendants moved for a new trial on the minutes, upon all the grounds stated in section 999 of the Code of Civil Procedure.   The motion was denied.   Judgment was entered for the plaintiffs upon the verdict.   Defendants appeal from the judgment and from the order. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

George Clinton, for appellants.

Adelbert Moot and William L. Marcy, for respondents.

HARDIN, P. J.   Plaintiffs were co-partners, carrying on business in the city of Buffalo under the style of Shepard Hardware Company, in February, 1893, owning property which they desired to have in-

sured. The defendants were co-partners in the fire insurance business in that city, and had, prior to the 23d of February, 1893, issued divers insurance policies to the plaintiffs, who, according to the complaint, applied to the defendants, and requested of them additional insurance against loss or damage by fire—

"In good companies duly authorized to do and transact business within the state of New York, covering their property and effects at their place of business at Buffalo, N. Y.; and defendants, in consideration of the sum of $48.60, duly paid by plaintiffs to them, undertook and agreed to issue, or cause to be issued, and delivered to plaintiffs, such authorized, good, standard insurance in the amount of three thousand ($3,000) dollars in good and valid policies, and thereafter and about the 23d day of February, 1893, defendants left with plaintiffs a certain alleged policy of insurance numbered 501,258, purporting to be issued by the Ohio Underwriters, composed and consisting of certain alleged insurance companies, namely, Western Insurance Company, Central Ohio Insurance Company, and the Home Insurance Company, each of which said companies were then and there foreign insurance companies, organized under the laws of the state of Ohio; that in and by said alleged policy said alleged companies purported to indemnify, protect, and insure plaintiffs against loss and damage by fire in the sum of three thousand ($3,000) dollars, and said alleged policy bore date February 23, 1893, and purported to insure plaintiffs' property, as aforesaid, for the term of one year thence next ensuing in consideration of a premium amounting to the sum of $48.60."

In the complaint it is further alleged:

"That at all the times in this complaint mentioned the Ohio Underwriters, composed, as aforesaid, of said Western Insurance Company, Central Ohio Insurance Company, and the Home Insurance Company, were not, nor were either of them, authorized to do and transact business within the state of New York, and none of said companies had complied with the terms and provisions of the laws of the state of New York authorizing and permitting them to issue valid policies of insurance within the state of New York, except upon compliance with the terms and provisions of the statutes of the state of New York relating to foreign insurance companies, and under the conditions hereinafter alleged; that at the time of the issuance and delivery of said alleged policy of insurance plaintiffs were not advised that said insurance policy was issued by foreign companies not authorized to transact business within the laws of the state of New York, but, on the contrary, that said policy of insurance was issued by companies duly authorized to transact business within the state of New York, and plaintiffs would not have taken or accepted the same had that fact been known to them."

It is further alleged in the complaint that at the time of the issuance of the said alleged insurance policy by said alleged Ohio Underwriters—

"Said alleged companies were, and each of them are, insolvent, which was well known to defendants, and by reason of the neglect and omission of the defendants * * * said alleged policy of insurance was void, ineffectual, and worthless, and the same was and is not enforceable, either in law or in equity, against the companies purporting to issue the same; that plaintiffs were not advised at any time that said alleged policy of insurance was not issued by companies authorized, as aforesaid, to transact business within the state of New York, and had not complied with the insurance laws thereof, and defendants wrongfully concealed said fact from plaintiffs, nor were they advised that said companies were insolvent, and that said policy was worthless, but that plaintiffs took and received said policy relying upon the same as being a policy issued by authorized standard companies doing and transacting business within the state of New York, and also relying upon their being solvent companies, and so relying thereon did not procure other insurance to be taken in its place and stead."

The complaint alleges that on the 8th day of May, 1893, all the property and effects owned by and belonging to the plaintiffs, described in said alleged policy of fire insurance, were destroyed by fire, and that the plaintiffs suffered and sustained thereby great loss and damage to an amount in excess of the sum of $3,000, the amount of said alleged policy. It is further alleged that the plaintiffs caused proofs of loss to be made in due form, and delivered to said Ohio Underwriters, but said alleged insurance company described as said Ohio Underwriters did not pay, and about the time of the presentment of the said proofs of loss the plaintiffs "ascertained that said companies were foreign companies as aforesaid"; and it is alleged that the plaintiffs have sustained loss and damage in the sum of $2,768.56. The answer of the defendants admits that the plaintiffs are partners, and admits that the defendants were engaged as copartners in the fire insurance business in February, 1893; and their answer contains denials of the other parts of the plaintiffs' complaint.

By the plaintiffs' evidence it appears that the property sought to be covered by the policy of insurance was of the value of some $140,000, and that it was insured in numerous other companies at the time the application was made to the defendants for the policy which is the subject of controversy; and it satisfactorily appears by the evidence that, if the plaintiffs were entitled to recover, the sum of $2,768.56 is the proper measure of the damages sustained by the plaintiffs by reason of the alleged failure of the defendants to comply with their duty and obligation to the plaintiffs at the time of the issuance of the policy delivered in the Ohio Underwriters. Prior to February, 1893, the defendants had been transacting a large amount of insurance business for the plaintiffs, and had received from the plaintiffs large sums of money in settlement for policies issued upon the property of the plaintiffs, and several interviews and negotiations had taken place between the plaintiffs and the defendants in respect to the nature and character of the insurance desired by the plaintiffs. Plaintiffs seem to have been quite particular and solicitous in respect to the kind and character of insurance policies which they were to receive from the defendants. However, the plaintiff Charles G. Shepard had very little to do with the solicitations for insurance. He testified, viz.:

"I had very little to do with the matter of getting the insurance or getting the property insured. My brother usually attended to that. I did not know anything about this particular policy in question down to the time of the fire. I did not know we had such a policy until after the fire."

To support the allegations of the plaintiffs' complaint, they called as a witness one Weig, who was a clerk in the employ of the plaintiffs at the time the policy was solicited from Smith, Davis & Co. He testified that he had a conversation over the telephone with Mr. Cadwallader, of Smith, Davis & Co., which conversation was held at the instance of one of the plaintiffs, and that upon his applying to Smith, Davis & Co. they informed him that they could probably place it. He testifies that Cadwallader came to the office of the Shepard Hardware Company, and brought in a policy to the plaintiffs, being Ohio Underwriters No. 501,258. That policy was received in evi-

dence, and is marked "Exhibit H," and is set out in the record. The policy was not left at the store on the first occasion of his entering it, but some two or three days afterwards Cadwallader said:

"That he had a policy that he would like to leave with me, and asked me to inform Mr. Shepard about the policy, and told me it was a good company, and the company was all right. * * * There was no other new policy except this one. This was the only additional insurance. He stated that it was a good company, and all right. That he said about the policy of the Ohio Underwriters. * * * I usually handed to Mr. Shepard all the policies that came in. I do not remember the time that I handed this to him. I called his attention to what Mr. Cadwallader told me to tell him. I mean by that that I told him what Mr. Cadwallader told me to. I entered it on the insurance expiration book at the time, so it was placed among our other policies in the office."

The plaintiff Walter Shepard, when upon the stand, testified, in referring to interviews with the defendants, viz.:

"On the other hand, they told us a great many times they would look into the company the policies of which they gave."

The evidence to which reference has been made was to a considerable extent contradicted, explained, or qualified by evidence produced in behalf of the defendants. We are strongly urged by the learned counsel for the defendants to set aside the verdict as against the weight of evidence. We find, upon an examination of the voluminous record, that there is such a conflict in the evidence that it was the province of the jury to determine where the truth was to be found, after considering all the aspects of the evidence that was before the jury upon the important questions of fact presented by the evidence. We are therefore disinclined to disturb the verdict upon the alleged ground that it is contrary to the weight of evidence. The case was delivered to the jury by a very careful and clear charge, and we think it our duty to accept the verdict upon the issues of fact. In speaking of the conflict as to the evidence of Weig and Cadwallader, the court said:

"You are under no legal obligation to take the evidence of either except so far as the inherent truthfulness of the statements of witnesses commends it to your judgment. They are both interested in the litigation. Mr. Cadwallader swears he is not a defendant. But he was a partner; so he is interested in the result of this litigation, and therefore his evidence as well as the evidence of the plaintiffs in the case is to be tested by the circumstances and probabilities to determine to which you will then give credit in disposing of the disputed questions. If you find, as I have already stated, that the plaintiffs authorized the defendants to procure outside insurance, and they did so, and they exercised a reasonable degree of care and prudence in the selection of them, they cannot be held liable for this loss; but, though the defendants were authorized to select outside companies, that did not absolve them from the obligations imposed by law under the contractual relations existing between the parties. The law continued the obligation with them. If they were authorized to select companies outside the state of New York, the law continued the obligation, and required them to still exercise the same reasonable degree of care and prudence which an ordinarily prudent person would exercise in the selection of those companies. That was what they were employed for, and, unless the plaintiff is estopped from a recovery on account of his own negligence,—to which I will hereafter call your attention,—it then became the duty of these defendants to make such an examination as a prudent person would make in ascertaining whether or not this was a proper company to issue this policy upon the risk in question."

We think the charge was as favorable to the defendants as, under the evidence, they were entitled to receive from the court. We think it presented the salient questions of fact to the jury in a clear and cogent manner, and that it accords with the rules of evidence and the principles of law applicable in such cases. We must therefore accept the verdict as finding that the defendants undertook to give to the plaintiffs good and valid policies in companies authorized to do business in the state of New York, and that the evidence establishes that the defendants failed to comply with their undertaking with the plaintiffs, and that, in consequence of the failure of the defendants to comply with the assurances and obligations they had entered into with the plaintiffs, the plaintiffs suffered the damages which are named in the verdict.

By chapter 690 of the laws of 1892 the legislature revised and consolidated the insurance laws of the state, and in section 137 (2 Sess. Laws 1892, p. 1991) provided for a license to be obtained by agents "to procure policies of fire insurance in corporations which are not authorized to do business in this state." That section further provides that, before any insurance shall be procured, "there shall be executed by the licensed agent and by the party desiring insurance an affidavit in duplicate, one of which shall be filed in the insurance department and the other in the clerk's office of the county in which the property proposed to be insured is located, within thirty days after the procuring of such insurance. Such affidavits shall set forth that the party desiring insurance is after diligent effort unable to procure the amount required to protect the property owned or controlled by him from the insurance corporations duly authorized to transact business in this state." Near the close of that section is the following provision: "All fire insurance policies issued to residents of this state on property located herein by companies that have not complied with the requirements of the general insurance laws of the state, shall be void, except such as have been provided as herein set forth." That section was amended by chapter 611 of the Laws of 1894, and the sentence which we have just quoted was re-enacted with the change of the word "provided" to the word "procured." Sess. Laws 1894, p. 1379, c. 611; 2 Rev. St. (9th Ed.) p. 1195.

The evidence fails to indicate that the defendants complied with the statute to which reference has been made, and the jury was warranted in finding that the defendants had failed to procure for and deliver to the plaintiffs a valid policy in accordance with their undertaking with the plaintiffs.

In Loeb v. Hellman, 83 N. Y. 602, in speaking of the duty of an agent, Folger, J., said:

"It is that the agent is understood to engage for reasonable skill and ordinary diligence, and is liable only for injuries to his principal growing from a want of that skill and from ordinary negligence. Leverick v. Meigs, 1 Cow. 645; Lawler v. Keaquick, 1 Johns. Cas. 174. And this is the rule, because the relation constituted in such cases is generally one for the benefit of both parties."

It is evident from the evidence in this case that the defendants were to profit by the transaction which they undertook to carry out

in the securing of a policy of insurance in accordance with the request of the plaintiffs. Plaintiffs had the right to rely upon the agents in the carrying forward of the undertaking made with the plaintiffs, and to suppose that the defendants would not put upon the plaintiffs a policy in any insolvent company, and that the defendants would ascertain the responsibility of the companies issuing the policies which they proffered to the plaintiffs, or at least exercise reasonable diligence in that regard, and that the defendants would make some inquiry as to the company whose policy they proposed to deliver, and to ascertain whether it was authorized to do business in this state or not, and to refuse to give the plaintiffs a policy that had no substantial support behind it. It was the duty of the defendants to make careful inquiry, and obtain careful information of the responsibility of the companies in which they placed the plaintiffs' risks.

In Wilkinson v. Coverdale, 1 Esp. 75, the case of Wallace v. Tellfair, 2 Term R. 188, note, was approved, in which case it was held:

"That though there was no consideration for one party's undertaking to procure an insurance for another, yet where a party voluntarily undertook to do it, and proceeded to carry his undertaking into effect by getting a policy underwritten, but did it so negligently or unskillfully that the party could derive no benefit from it, that in that case he should be liable to an action."

In Vann v. Downing, 48 Leg. Int. 264, it appeared that money was sent to insurance agents with the instruction, if they could not give the sender a good company, to return the money. They insured him with a company that had not complied with the laws of the state, and was not admitted to do business therein, and it was held that, the company being insolvent, the agents were liable for the loss. A somewhat similar doctrine was laid down in Criswell v. Riley (Ind. App.) 30 N. E. 1101. The defendants were bound to act in good faith, and to exercise reasonable diligence, and it was such care as is ordinarily possessed by persons of ordinary capacity engaged in similar business.

In the course of the opinion in Heinemann v. Heard, 50 N. Y. 35, Rapallo, J., said:

"An agent is bound not only to good faith, but to reasonable diligence, and to such skill as is ordinarily possessed by persons of common capacity engaged in the same business. Story, Ag. §§ 183, 186. Whether or not he has exercised such skill and diligence is usually a question of fact, but its omission is equally a breach of his obligation, and injurious to his principal, whether it be the result of inattention or incapacity, or of an intent to defraud. In the case of Entwisle v. Dent, 1 Exch. 822, there was an element of fraud as well as breach of duty, but the judgment of the court was not founded upon the fraud, nor could it be, as the action was for breach of the implied contract of the defendant to act according to instructions."

We see nothing in the case which requires us to say that the plaintiffs ratified the act of the defendants.

In King v. Mackellar, 109 N. Y. 223, 16 N. E. 203, Gray, J., said:

"Ratification implies a knowledge of the circumstances and of the right to reject or ratify."

The evidence warranted the jury in finding that the plaintiffs had no knowledge of the infirmities in the proffered policy of the Ohio

Underwriters until after the fire occurred. After the plaintiffs as-
certained the failure of the defendants to perform their duty in the
premises, there was no conduct or act on the part of the plaintiffs
which required the jury to find that the plaintiffs adopted or rat-
ified the improper conduct of the defendants in respect to the policy
in the Ohio Underwriters. The fact that the plaintiffs settled a
bill which the defendants had rendered to them of some five hun-
dred and odd dollars, which, among other items, included the sum
charged for the policy in question, we think would not deprive the
plaintiffs of their right of action against the defendants. There
was a custom to give credit to the plaintiffs for premiums, and to
charge the premiums to the plaintiffs; and in the course of the busi-
ness thus carried on the defendants charged the plaintiffs for this
insurance as if it had been good insurance in good companies; and
when the plaintiffs paid the bill rendered in the month of April to
them the item for the insurance in question was included, and the
plaintiffs then had no other knowledge that the Underwriters policy
was invalid, and worthless, than such as was derived from the fact
that an insurance adjuster, called in to aid the plaintiffs in securing
an adjustment, had thrown out the policy, and declared that it was
worthless. It seems the fire took place on the 8th of May, and the
general bill rendered by the defendants was paid on the 13th of
May. Under such circumstances we think there was no ratification,
and that the plaintiffs were not estopped from asserting their rights
against the defendants in the premises.

We think the case of Rathbun v. Steamboat Co., 76 N. Y. 376,
cited by the learned counsel for the appellants, differs very essen-
tially from the case in hand. In that case the reception of the
check in lieu of the money was held to be a ratification, and a
waiver of the requirements to collect the money for goods trans-
ported C. O. D. Nor do we think the suggestion of the learned
counsel for the appellants that the policy issued by its terms be-
came void for nonpayment of premiums after March 26, 1893, ad-
vantages the defendants.

The defendants called as a witness one Bowen, who testified that
he was in the employ of Moore, Campbell & Kelner in 1893, and
that they represented the Ohio Underwriters, and procured policies
from them, and that that firm issued policies in February, 1893,
about the first part of the month, "until about the middle of April."
Thereupon the following question was propounded to the witness:
"Q. Did you at that time understand and believe that the Ohio
Underwriters was financially responsible, and a good company?"
The question was objected to by the plaintiffs' counsel on the ground
that it was entirely immaterial and incompetent. The objections
were sustained, and the defendants took an exception thereto. We
fail to see how the "understanding" or the "belief" of the witness in
the month of April was important as the issue stood at the time
the evidence was offered. We think the court committed no error in
sustaining the objections to the proposed question.

We have looked at some other questions presented by the learned
counsel for the defendants, and we are not satisfied that any of

them require us to disturb the verdict of the jury upon the essential questions of fact presented by the voluminous evidence before the trial court. The foregoing views lead us to the conclusion that the trial was conducted properly by the learned trial judge, and that the evidence sustains the verdict, and that the verdict should be sustained by this court.

Judgment and order affirmed, with costs. All concur, except SPRING, J., not voting.