ASSUNTA GIANNASCA vs. EVERETT ALUMINUM, INC.

Middlesex. December 10, 1981. — February 18, 1982.

Present: HALE, C.J., BROWN, & SMITH, JJ.

*Evidence,* Expert opinion, Hearsay. *Consumer Protection Act,* Availability of remedy, Attorney's fees, Multiple damages.

In an action for breach of contract for the performance of exterior work on the plaintiff's house, the judge did not err in excluding the opinion of an expert that the water damage in the plaintiff's apartment was caused by improper installation of the roof, where the absence of evidence concerning any defect in the new roof installed by the defendant left the expert's proffered testimony in the realm of speculation. [210-211]

In an action for breach of contract for the performance of exterior work on the plaintiff's house, the judge erred in denying the plaintiff's motion to strike testimony admitted during the plaintiff's examination of the defendant's president concerning the cause of damage to a detached corner post which the plaintiff alleged had been improperly installed, where his testimony was hearsay and also exceeded the scope of the question. [211-213]

Intentional conduct is not an essential element for recovery under the Consumer Protection Act, G. L. c. 93A. [213]

In an action under G. L. c. 93A alleging defects in the defendant's workmanship and materials in the performance of exterior work on a house, the plaintiff was entitled to relief, including actual damages and reasonable attorney's fees and costs, based solely on a finding that the defendant had committed a "substantial and material breach" of its warranty obligations which the judge implicitly found when he assessed $500 damages for the defendant's failure to repair a corner post. [213-214]

In an action under G. L. c. 93A, § 9(3), where this court was not certain that the judge had addressed crucial factual questions and could not resolve them as matters of law on the record presented, the case was remanded for findings necessary to determine the plaintiff's right to multiple damages. [214]

CIVIL ACTION commenced in the Superior Court on December 8, 1977.

The case was heard by *Scannell*, J., a District Court judge sitting under statutory authority.

*Martin H. Green* for the plaintiff.

*Richard J. O'Neil* for the defendant.

HALE, C.J.    The plaintiff appeals from a judgment entered in her favor in the Superior Court.  She alleges that the judge erred in two of his evidentiary rulings and in failing to find that the defendant had violated G. L. c. 93A.

The plaintiff is the owner of a three-story dwelling located in East Boston.  She lives in an apartment on the third floor and rents the lower two floors.  On November 26, 1971, she entered into a contract with the defendant under which the defendant agreed to perform various exterior work on the plaintiff's house.  This work included replacing the roof and insulating and recovering the house with vinyl siding.  The contract contained a printed guarantee which stated that the defendant guaranteed its workmanship for twenty years and that, during this period, it would replace all faulty material and repair all faulty workmanship free of charge.  That guarantee was amended by a hand-written notation made by the defendant's sales representative which stated that the vinyl siding would be guaranteed for thirty years.  The defendant performed the work called for by the contract some time in February, 1972, and was paid the agreed upon price of $4,000 in full.

Problems concerning the defendant's work developed nine or ten months later.  The plaintiff's son testified that, around this time, the ceiling in the plaintiff's apartment began to leak and the vinyl siding began to fall apart.  As a result the plaintiff made numerous complaints to the defendant in an effort to have these apparent defects corrected.  Although the extent of the defendant's response to those complaints is not clear, it does appear that the defendant sent its workers to the plaintiff's house on a number of occasions and that some repair work was done.  Nevertheless, the plaintiff remained dissatisfied with the quality of the defendant's work.  Accordingly, when the defendant refused to make any further repairs, the plaintiff sent the defendant

a demand letter pursuant to G. L. c. 93A, § 9(3), as amended through St. 1973, c. 939. This letter alleged nine separate defects in the defendant's workmanship and materials and sought $4300 in actual damages. When the defendant failed to respond to that demand letter, the plaintiff commenced this action, alleging that the defendant had violated its contractual obligations and also G. L. c. 93A.

After a nonjury trial in the Superior Court, the judge found that the defendant had broken its contractual guarantee only as to one corner post which he found to be loose and detached. He found that a second corner post had been hit by a vehicle and that damage to it was not attributable to a breach of the contract. He further found that, apart from an allegation that some water damage had resulted from the roof area, the plaintiff had presented no evidence of any defect of workmanship or materials in the replacement of the roof and that water could have penetrated the plaintiff's apartment through broken windows and a separated threshold contained in a shed located on the roof. Finally, he found that the plaintiff was not entitled to relief under c. 93A because the defendant had committed no knowing or wilful violations of that act. Judgment for the plaintiff was entered in an amount of $500.

1. At trial the plaintiff called as a witness a "public adjuster." He was qualified as an expert and testified to his observations of alleged defects in the vinyl siding on the plaintiff's house and gave his opinions concerning the reasons for them. He also testified to the water damage in the plaintiff's apartment and gave an opinion of the costs of repairing it. Although the expert admitted that he had never gone up on the roof to examine it, he stated that the water causing that damage would have had to enter the apartment through the roof.

The plaintiff then sought to elicit the expert's opinion as to whether water could have penetrated the roof if the defendant had installed it properly. She sought that opinion through questions based on the expert's observations of the interior of the apartment and through hypothetical questions

concerning the likelihood that water would penetrate a properly-installed roof. Timely objections to these questions were sustained, and the plaintiff appeals, alleging that these rulings unduly restricted her examination of this expert.

The admission of expert testimony rests in large part in the sound discretion of the trial judge. See *Consolini* v. *Commonwealth*, 346 Mass. 501, 503 (1963). *DeJesus* v. *Hamel*, 349 Mass. 764 (1965). See generally Liacos, Massachusetts Evidence 103-117 (5th ed. 1981). It is well established that one principle governing the exercise of that discretion is the sufficiency of the facts on which the expert's opinion is based. Expert opinion which amounts to speculation may be disregarded or excluded. *Brownhill* v. *Kivlin*, 317 Mass. 168, 170 (1944). *Nass* v. *Duxbury*, 327 Mass. 396, 401-402 (1951). *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971). *Reed* v. *Canada Dry Corp.*, 5 Mass. App. Ct. 164, 166 (1977). "To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion." *Nass* v. *Duxbury, supra* at 402, quoting *Ruschetti's Case*, 299 Mass. 426, 431 (1938).

These principles demonstrate that there was no error in the judge's exclusion of the appraiser's opinion that the water damage in the plaintiff's apartment was caused by improper installation of the roof. Although the appraiser had stated his opinion that the damage had been caused by water penetrating the roof, there is nothing in the record to suggest that that penetration was due to the defendant's improper installation. The judge specifically found that water could have penetrated the roof through the shed located on it which had broken windows and a separated threshold and that work on the shed was not included in the contract. The absence of evidence concerning any defect in the new roof installed by the defendant left the expert's testimony, given or proffered, in the realm of speculation. The judge was well within his discretion in excluding it.

2. The plaintiff also argues that the judge erred in admitting a statement concerning the cause of damage to one of

the corner posts. She alleges that the statement was inadmissible hearsay and that it was the only evidence in the record supporting the judge's finding that damage to this post had been caused by a vehicle striking it.

The contested statement was admitted during the plaintiff's examination of the defendant's president Robert Conti. In the course of his testimony, Conti was questioned about his observations and knowledge of two detached corner posts which the plaintiff alleged had been improperly installed. At one point Conti identified one of these purportedly damaged posts as "the one that was hit by a truck."

The plaintiff did not immediately move to strike that statement. She did, however, ask Conti several questions apparently intended to establish that he had no personal knowledge of the alleged accident. After Conti admitted that he had not been present when the accident occurred, the plaintiff asked him what he had observed that allowed him to form an opinion that the corner post had been struck by a car. In response, Conti stated that "some woman who supposedly had done it called me up and told me." The plaintiff then made a motion to strike which we regard as referring to all of the testimony concerning the cause of the damage to the post by a motor vehicle. The motion should not have been denied.

By seeking the "observations" on which Conti's description of how the post had been damaged was based, the plaintiff limited the scope of permissible response to what Conti had himself seen. Because Conti's responses to the questions were hearsay and also exceeded the scope of the question, they should not have been admitted. As the judge's finding that the second post was defective is supported by the evidence and as there is also some evidence in the record supporting the plaintiff's contention that the damage was attributable to the contract, it is possible that a remand of this issue would result in a judgment that the defendant had violated its warranty obligations in the installation or repair of this second post. However, because the record is devoid of evidence by which the dollar amount of the damage

to the post could be ascertained, any relief would be necessarily limited to an award of nominal damages (see *Page* v. *New England Tel. & Tel. Co.*, 9 Mass. App. Ct. 916 [1980], *S.C.*, 383 Mass. 250 [1981]), and no useful purpose would be served by remanding the matter for such an award.

3. The plaintiff also alleges that she was entitled to relief under c. 93A and raises three arguments in support of that contention. First, she argues that the judge erroneously ruled that "violations of c. 93A" require knowing or wilful conduct by the defendant. Second, she alleges that the judge erred in failing to find that the defendant's breach of its warranty obligations was also an unfair or deceptive act or practice within the meaning of G. L. c. 93A, § 2. Finally, she argues that she is entitled to multiple damages under G. L. c. 93A, § 9(3), because the defendant's refusal to grant her relief was in bad faith and with knowledge or reason to know that it had violated § 2. We agree that on the judge's findings the plaintiff is entitled to some relief under c. 93A but remand for consideration whether she may recover multiple damages.

The Supreme Judicial Court has rejected the proposition that c. 93A requires a showing that the defendant's unfair or deceptive act was knowing or wilful. In *Linthicum* v. *Archambault*, 379 Mass. 381 (1979) (decided after the trial in this case), the court awarded relief under c. 93A despite a determination that the underlying acts resulted from negligent, rather than intentional conduct. In reaching its conclusion the court expressly recognized that, although the absence of intentional conduct may preclude recovery of multiple damages, it is not a defense to a c. 93A claim. *Id.* at 388. *Linthicum* mandates that the judge's determination in this case that intentional conduct is an essential element of a c. 93A claim be set aside.

*Linthicum* also demonstrates that the plaintiff is entitled to relief under c. 93A as matter of law. In *Linthicum*, the court awarded relief under c. 93A based solely on a finding that the defendant had committed a "material and substantial breach" of its warranty obligations. See 379 Mass. at 387.

Even assuming that § 2 is violated only by a breach of a warranty obligation that is both "substantial" and "material" (but see Attorney General's Rules and Regulations, 940 Code Mass. Reg. § 3.08[2] [1978], providing that the failure to fulfil any promise arising under a service contract warranty constitutes a violation of § 2), such a violation occurred here as the judge implicitly found when he assessed $500 damages for the failure to repair a corner post. We conclude that the plaintiff is entitled to relief under c. 93A. In addition to the actual damages already awarded, that relief must include reasonable attorney's fees and costs. See G. L. c. 93A, § 9(4).

Finally, the plaintiff claims to be entitled to multiple damages under G. L. c. 93A, § 9(3), alleging that the defendant's refusal to grant her relief upon demand was in bad faith and with knowledge that it had violated § 2.[1] This contention raises factual questions concerning the quality of the defendant's response to the plaintiff's complaints and the reasons underlying its ultimate refusal to make further repairs. Because we are not certain that the judge addressed these questions and because we cannot resolve them as matters of law on the record before us, the plaintiff's right to multiple damages must be resolved on remand.

The judgment is reversed, and the case is remanded to the Superior Court, where the judge is to make findings as to whether the defendant's failure to make adequate repairs to the corner post was in "bad faith with knowledge or reason to know" that it had violated c. 93A, § 2, by failing to repair the post properly. Reasonable attorney's fees and costs are to be assessed, and judgment is to be entered accordingly.

*So ordered.*

---

[1] The case has been argued under G. L. c. 93A, § 9, and no question has been raised concerning the applicability of that section. Compare *Linthicum* v. *Archambault, supra* at 387 n.9. See also G. L. c. 93A, § 9(1), as in effect prior to St. 1979, c. 406, § 1.