WILLIAM MACGILLIVARY *vs.* W. DANA BARTLETT INSURANCE
AGENCY OF LEXINGTON, INC., & another.[1]

Suffolk. April 14, 1982. — June 18, 1982.

Present: HALE, C.J., CUTTER, & GRANT, JJ.

*Practice, Civil,* Appeal. *Negligence,* In procuring insurance policy.
*Contract,* To procure insurance. *Consumer Protection,* Insurance
broker, Negligence.

An appeal claimed within thirty days of July 25, 1980, the date on which
the trial judge endorsed the defendants' motion for a new trial as
denied, was properly before this court, where the record was unclear
whether the judge's memorandum of decision of May 16, 1980, pur-
ported to be a denial of the motion for a new trial. [55]

Evidence warranted jury findings that an insurance broker and an insur-
ance brokerage firm were negligent by reason of their having procured
an insurance policy from a company not authorized to do business in
Massachusetts. [56]

A trial judge's decision concerning an insurance broker's liability in con-
tract was interpreted as making the finding, which he could reason-
ably have made, that the broker committed a breach of an implied
term of his brokerage arrangement with the insured by procuring for
him, albeit unintentionally, an insurance contract with an unlicensed
insurer. [57]

Where there was no adequate showing or finding that the negligence of
an insurance broker and the insurance brokerage firm for which he
worked or their breach of an implied term of the brokerage arrange-
ment resulted in any damage to the insured, this court remanded the
case for further findings limited to the issue of proximate causation.
[57-58]

An insurance broker's negligence in procuring an insurance policy from
an unlicensed insurer in violation of G. L. c. 175, § 160, constituted a
violation of G. L. c. 93A, § 2, for which recovery under c. 93A, § 11,
is allowable. [58-61]

CIVIL ACTION commenced in the Superior Court on
November 25, 1977.

---

[1] John F. Lee, broker with the W. Dana Bartlett Agency of Lexington, Inc.

The case was tried before *Sullivan*, J.

*Joseph K. Mackey* for the defendants.

*Philipp G. Grefe* for the plaintiff.

CUTTER, J.  MacGillivary, doing business as Arlington Motor Mart and Marine and engaged in the selling of boats, in 1977 purchased a Sea Ray motorboat, to be used for demonstration purposes in the Gloucester harbor area. He ordered insurance (including theft coverage) for it through an insurance brokerage office, W. Dana Bartlett Agency of Lexington, Inc. (Bartlett), and John F. Lee, a broker with Bartlett, theretofore frequently employed by MacGillivary. Lee had difficulty (based upon underwriting problems, perhaps because MacGillivary was a dealer in boats and because of the high horsepower ratio of the particular boat) in placing the insurance. Lee and Bartlett were unable to obtain coverage through their usual insurers. Through another broker, Thomas J. Myers, Lee got in touch with Norman Harrison, a general agent for General Fire and Marine, Ltd. (General Fire). The insurance was placed with General Fire, a company incorporated in the Cayman Islands, British West Indies, with coverage of $31,000 less a deductible of $620.

In August, 1977, the motorboat was stolen. MacGillivary reported the theft and filed a claim (through Bartlett and Harrison) with General Fire. Harrison acted as adjuster but took no action until pressed by Lee to do so. Investigators engaged by Harrison confirmed the theft and that the boat had not been recovered. General Fire has failed to pay or settle the claim. Counsel retained by MacGillivary ascertained that General Fire was not licensed to do business in Massachusetts. See G. L. c. 175, § 150, and related sections.

MacGillivary brought this action on November 25, 1977, against (a) General Fire, (b) Bartlett and Lee, (c) Myers, and (d) Harrison. The complaint, as amended, asserted various claims against the several defendants, among others (1) for negligence in the cases against Lee and Bartlett; and (2) in contract and under G. L. c. 93A, against all the defendants. General Fire appeared by counsel and filed an

answer, not included in the record appendix. Various demands for admissions (Mass.R.Civ.P. 36, 365 Mass. 795-797 [1974]), not answered, were treated as admitted against General Fire and Harrison.

The judge, without objection by counsel, in effect bifurcated the trial. He submitted to the jury some issues, especially those of negligence of some of the defendants and the liability of General Fire and Harrison (based on their failure to answer demands for admissions). He reserved for his own decision the claims made under G. L. c. 93A. To the jury, the judge put special questions concerning whether Lee, Myers, and Harrison, respectively, were "negligent in the procurement of the insurance policy." The jury answered each such question in the affirmative and found for MacGillivary for breach of contract against General Fire in the amount of $30,380, the amount of the policy ($31,000) less the deductible of $620.

The judge, on May 16, 1980, filed a memorandum of decision (see Mass.R.Civ.P. 49[a], 52, 365 Mass. 812, 816 [1974], and 58, as amended, 371 Mass. 908 [1977]). In this he ruled, inter alia, (1) that actions taken by Lee were binding on Bartlett; (2) that a breach of "an implied covenant [with Mac-Gillivary] of good faith and fair dealing" had been committed by Lee, Bartlett, Myers, and Harrison by reason of the procurement of an insurance policy with a company not authorized to do business in Massachusetts under G. L. c. 175, § 151; (3) that Harrison (see G. L. c. 175, § 162) was the Massachusetts "agent" of General Fire and was liable to MacGillivary under G. L. c. 175, § 171 (although Lee and Myers, not "agents," could not be found liable under that section), and (4) that General Fire, by unlawfully delaying payment to MacGillivary, had committed "an unfair and deceptive act or practice" under G. L. c. 93A and under c. 176D, § 3(9)(b) and (f), as in effect prior to St. 1977, c. 801, § 8. He held each of the defendants liable for violation of c. 93A. Because MacGillivary was engaged "in the conduct of . . . trade or commerce" (see G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2) the judge treated him as

entitled to recover "actual damages" (plus attorneys' fees and costs) from Lee and Myers, whose conduct was not a wilful or knowing violation of § 2. The judge held (apparently because of this violation of c. 175, § 151, and c. 93A by Harrison and General Fire) that MacGillivary was entitled to recover double damages, attorneys' fees, and costs from these two defendants. On May 23, 1980, judgment was entered for MacGillivary in accordance with the memorandum of decision of May 16, 1980. Lee and Bartlett filed notice of appeal on August 22, 1980.[2] On March 18, 1980, Lee and Bartlett had filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was not denied formally until July 25, 1980, when the trial judge endorsed the motion as denied.

1. This appeal claimed within thirty days of July 25 (see Mass.R.A.P. 4, as appearing in 378 Mass. 928 [1979]) is properly before us. The effective judgment is that dated May 22, 1980, and filed the next day (Docket Item No. 90). This judgment followed the memorandum of decision of May 16, 1980.[3] It is apparent from the record that there was confusion about the effect of the memorandum of decision. That memorandum did not clearly purport to be a denial of the motion for a new trial. The trial judge seems, by his action in endorsing the motion as denied on July 25, to have recognized that this memorandum may have caused uncertainty. This is not an appropriate case for applying any principle of denial (by the memorandum of decision) of that motion sub silentio.[4]

---

[2] No appeals have been taken by defendants other than Lee and Bartlett.

[3] The judgment contained a mistake of $100 in subtracting the $620 deductible, with the result that the principal amount of the recovery was listed as $30,280 instead of $30,380, a mistake which should be corrected on remand.

[4] This principle has been approved in several Federal cases. See, for example, Mosier v. Federal Reserve Bank, 132 F.2d 710, 712-713 (2d Cir. 1942). On a less obscure record, clearly showing (in the record appendix) that argument of the motion for a new trial took place prior to the filing of the memorandum of decision and that the decision was intended as a denial of the motion, a different result might have been reached.

2.   The evidence warranted the jury findings that Lee
and (because of Lee's participation) Bartlett were negligent
in procuring an insurance policy from a company not au-
thorized to do business in Massachusetts.   The violation of
c. 175, § 160,[5] was in itself some evidence of negligence.
See *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498, 499-500
(1968); *Perry* v. *Medeiros*, 369 Mass. 836, 840-841 (1976);
*LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28-29 (1979);
Restatement (Second) of Torts § 286 (1965); Prosser, Torts
190 et seq. (4th ed. 1971); 2A Sands, Sutherland Statutory
Construction § 55.05 (4th ed. 1973 and Supp. 1982).   Sec-
tion 160 discloses a legislative intention to protect the public
from the risks attendant upon doing business with insurance
companies not authorized to write policies in Massachu-
setts.   The failure of Lee (a) to be aware that General Fire
was not authorized to do business in Massachusetts, and
thus to be in a position to inform MacGillivary of this, or (b)
to obtain significant financial information about General
Fire, also constituted evidence of negligence.[6]

---

[5] Section 160 (as amended by St. 1973, c. 683, § 1) reads in part: "Who-
ever, for a person other than himself, acts or aids in any manner in the
negotiation . . . of a policy of insurance . . . with a foreign company not
lawfully admitted to issue such policies . . . in this commonwealth shall,
except as provided in section one hundred and sixty-eight, be punished by
a fine . . . but this section shall not apply . . . ."   Here follow exceptions
and a proviso.   There is no contention that either the exceptions or the
proviso are pertinent here.   See *Commonwealth* v. *Nutting*, 175 Mass.
154, 155-156 (1900), aff'd, 183 U.S. 553 (1902), as to the purpose of a
predecessor of § 160 (St. 1894, c. 522, §§ 3, 98), as being "to secure peo-
ple against fraudulent or worthless contracts, and, in case of litigation, to
save them from having to go abroad."   See also *Shepard* v. *Davis*, 42 App.
Div. 462, 466-469 (N.Y. 1899).

[6] Myers, as a consulting broker, does not seem to us to be the type of
agent of Lee and Bartlett (or subagent of MacGillivary) referred to in
*Rayden Engr. Corp.* v. *Church*, 337 Mass. 652, 660 & n.1 (1958), who
"after his appointment stands in no fiduciary relationship to the selecting
agent and for whose acts the selecting agent is not responsible if he used
due care" making the selection.   Myers, we think, was acting for Lee and
Bartlett (as well as for MacGillivary although MacGillivary probably did
not know of his subagency) in all that he did and was responsible to them.
Also Lee and Bartlett were responsible for what he did with respect to
procuring this policy.   See Restatement (Second) of Agency § 5, Com-

14 Mass. App. Ct. 52                                    57

MacGillivary v. W. Dana Bartlett Ins. Agency of Lexington, Inc.

3. The trial judge ruled in somewhat general terms that Lee (by failing to obtain a policy with a company authorized to act in Massachusetts) had violated "an implied covenant of good faith and fair dealing" inherent in his agreement with MacGillivary to procure (or use reasonable efforts to procure) insurance on the motorboat. See *Druker* v. *Roland Wm. Jutras Associates*, 370 Mass. 383, 385 (1976); Restatement (Second) of Contracts § 205 (1981); 3 Corbin, Contracts § 541, at 95 (1960). See also Keeton, Insurance Law § 2.5(a) & (c) (1971). The judge, in so ruling, made no finding of fact and pointed to no act by Lee, other than the delivery of the General Fire policy (rather than a policy issued by an authorized insurance company), as constituting a breach of Lee's brokerage arrangement with MacGillivary. At the same time, as already indicated, the judge concluded that Lee's actions "were not willful, intentional, or deliberate." The judge's findings concerning Lee's liability in contract might well have been more complete and precise. We think, however, that the judge reasonably could have found that Lee committed a breach of an implied term of his brokerage arrangement with MacGillivary by procuring for him, albeit unintentionally, an insurance contract with an unlicensed insurer. We interpret his decision as making such a finding.

4. There is on this record no adequate showing or finding that the negligence of Lee and Bartlett or their breach of an implied term of Lee's brokerage arrangement resulted in any damage to MacGillivary. The trial judge made no sufficient finding that General Fire, primarily liable on the policy, was insolvent but merely stated that "General Fire might have financial difficulty in meeting its obligations under the policy." We think that, as in *Home Ins. Co.* v. *Columbia Ins. Agency, Inc.*, 5 Mass. App. Ct. 621, 622-623 (1977), it was incumbent on MacGillivary to establish that

---

ment b, §§ 362, 406; compare § 405 (1958). See also Reporter's Notes to these sections, and Seavey, Subagents and Subservants, 68 Harv. L. Rev. 658, 659 (1955).

Lee's negligence and breach of implied contract constituted a proximate cause of actual loss suffered by him. See *Rayden Engr. Corp.* v. *Church*, 337 Mass. 652, 662-665 (1958). See also *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 194-196 (1982). MacGillivary did not prove General Fire (and Harrison, its agent) to be unable to pay the judgments against them respectively. As between (a) these defendants and (b) Lee and Bartlett, the former (the insurer and its agent) have primary responsibility to indemnify MacGillivary. As in the *Home Ins. Co.* case, *supra*, the case must be remanded for further findings concerning the consequences proximately caused by Lee's negligence and implied breach.

On this part of the case only the issue of causation is remanded. The judge's conclusion that there was a breach of an implied contract term and the jury findings of negligence are to stand. In view of the relatively simple matters involved in the violation of c. 175, § 160, and the public policy behind that section, it was not necessary to establish by expert testimony that there was also a violation of some quasi professional standard (ordinarily exercised by insurance brokers) of reasonable care in the circumstances. See *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 500-501 (1980). See also Liacos, Massachusetts Evidence 103 et seq. (5th ed. 1981). Compare *Riggs* v. *Christie*, 342 Mass. 402, 407 (1961). Compare also *Campbell* v. *Thornton*, 368 Mass. 528, 536-538 (1975).

5. MacGillivary's brief in essence concedes that Lee's negligence by itself does not necessarily establish that he and Bartlett engaged in an unfair and deceptive trade practice forbidden by c. 93A. See *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979). The trial judge found that Lee's conduct was not "willful, intentional, or deliberate." There is no suggestion that Lee and Bartlett were responsible in any degree for the unlawful delays of General Fire and Harrison in respect of MacGillivary's claim, which gave rise to the liability of these defendants under c. 93A. Nothing about Lee's conduct suggests that Lee or Bartlett was engaged in anything other than an ordinary brokerage at-

tempt to obtain coverage on a boat difficult to insure for underwriting reasons.

MacGillivary relies, in seeking relief under c. 93A, on the facts that Lee and Bartlett were experienced insurance brokers and represented various licensed insurance companies, but procured a policy from General Fire, an unauthorized, unlicensed company, about which they knew little and in violation of the criminal provisions of c. 175, § 160, without making any direct inquiry of either General Fire or the office of the Commissioner of Insurance. In retrospect, the conclusion that Lee was negligent is reasonable. His conduct, however, does not fall "within any recognized conception of unfairness [and] is neither immoral, unethical, oppressive, nor unscrupulous," except to the extent that negligence involves failure to adhere to an applicable due care standard. See *PMP Associates* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). There is nothing in the judge's findings (or in the evidence on which reliance is placed) to suggest that the conduct objected to by MacGillivary was in fact deceitful or consciously unlawful or that it rose to "a level of rascality" described in *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979), as justifying relief under c. 93A, § 11. Compare the nondisclosure in bad faith of a known defect in *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626-628 (1978).

Chapter 93A, § 11, undoubtedly may have application to an unfair or deceitful practice by an insurer or an insurance broker. *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-79 (1977). See *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726-727 (1979). The evidence and findings indicate no improper conduct by Lee other than negligence. On this theory, and on the theory of implied breach of the brokerage contract, the liability of Lee and Bartlett has been recognized.

In *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979) (decided after the decision in the *Levings* case, 8 Mass. App. Ct. at 504), it was said in a proceeding under c. 93A, § 11,

that the breach there considered "was not wilful, intentional, and deliberate, but essentially was due to [acts of] inexperienced and unsupervised employees. *While it is not a defense to a c. 93A claim that the defendant's conduct was negligent rather than intentional,* negligence does not give rise to a multiple damages claim under § 11" (emphasis supplied). See *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 213-214 (1982). We must recognize, in view of the language just quoted from the *Linthicum* case, at least that negligence is not, by itself, a defense to a claim under c. 93A, § 11.[7]

Chapter 93A, § 2, inserted by St. 1967, c. 813, § 1, provides in part: "(*a*) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful . . . . (*c*) The attorney general may make rules and regulations interpreting the provisions of subsection 2(*a*) of this chapter" which "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting . . . 15 U.S.C. 45(a)(1) . . . as from time to time amended." Subsection (*c*) has been given a very broad interpretation. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 769-780 (1980). By that decision, a wide scope has been accorded to regulations promulgated by the Attorney General. One regulation thus formulated is 940 Code Mass. Regs. 3.16 (1978), which reads in part: "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of Chapter 93A, Section 2 if: (1) It is *oppres[s]ive or otherwise unconscionable* in any respect; or (2) Any person or other legal entity subject to this act fails to disclose to a buyer or

---

[7] Whether negligence may be a violation of c. 93A, § 11, does not seem to have been an issue in *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1 (1982), a case where c. 93A was held (at 5-7) not applicable at all to an arrangement between a mortgagor and a bank mortgagee, but (on a claim not based on c. 93A) where the bank was treated as having made a negligent misrepresentation concerning a site plan procured by it for the mortgagor (at 7-11).

prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or (3) It fails to comply with existing *statutes*, rules, regulations or laws, *meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth . . .* intended to provide the consumers of this Commonwealth protection . . ." (emphasis supplied). This catch-all provision was the subject of criticism by Mr. Justice Braucher in *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 710-711 (1979). It certainly does not add much by way of specificity to the provisions of c. 93A, § 2. In view, however, of language in the *Purity Supreme, Inc.* case, *supra*, and the language already quoted from the *Linthicum* case, *supra*, we think that (in the absence of further decisional guidance) a negligent violation by a broker of G. L. c. 175, § 160, must be taken to constitute a violation of G. L. c. 93A, § 2, for which recovery under § 11 is allowable. Apart from the authorities just mentioned, we would have thought that Lee's negligent conduct did not give rise to such liability.

The same problem (as to the extent shown by this record of MacGillivary's actual loss) arises with respect to the recovery allowed under c. 93A,[8] as was discussed (see part 4 of this opinion, *supra*) in respect of Lee's and Bartlett's liability for negligence and breach of contract. The case also must be reconsidered on the issue of the damages under c. 93A actually caused to MacGillivary. There is to be at most one recovery of damages (and of attorneys' fees so far as recoverable) on these three theories.

---

[8] Chapter 93A, § 11, inserted by St. 1972, c. 614, § 2, gives relief to one "who engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . *as a result* of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful" (emphasis supplied) by c. 93A, § 2, or a rule or regulation issued under par. (*c*) of § 2. The emphasized words of § 11 indicate the necessity of proof that the deceptive act or practice caused the plaintiff's loss and of the extent of that loss.

6.  We need not consider the contention in the brief of Lee and Bartlett that part of the argument of MacGillivary's attorney was prejudicial.  The arguments of counsel have not been reproduced in the record appendix. See *Kunen* v. *First Agricultural Natl. Bank,* 6 Mass. App. Ct. 684, 689-692 (1978).

7.  The case is remanded to the Superior Court for further consideration of the issue of damages (and of attorneys' fees) in a manner consistent with this opinion.  Costs and counsel fees of this appeal are to be in the discretion of the Superior Court.

*So ordered.*