GOURGIANA BEDROSIAN *vs.* THE EUREKA–SECURITY FIRE
AND MARINE INSURANCE COMPANY
(and two companion cases [1]).

Suffolk. October 4, 1945. — November 28, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Insurance,* Fire insurance: coverage of policy, fraud on insurer. *Building. Evidence,* Presumptions and burden of proof. *Fire. Words,* "Designed."

A clause of a fire insurance policy providing that it covered a building "designed for occupancy by not more than one" family meant a building architecturally adapted for occupancy by one family.

Evidence respecting "a long frame building" consisting of a main portion and an ell and having two front entrances and two rear entrances, a large living room, a back parlor, a kitchen, two bathrooms, eleven bedrooms, and a large play or card room, warranted a finding that the building was architecturally adapted for occupancy by one family and was within a provision of a fire insurance policy that it should cover a "building . . . designed for occupancy by not more than one" family.

The defendant insurer in actions on a fire insurance policy had the burden of proving its contention that the fire causing the loss had been set by the plaintiff owner or by a plaintiff mortgagee, or by them "in collaboration," for the purpose of defrauding the defendant.

THREE ACTIONS OF CONTRACT. Writs in the Superior Court dated June 11, 1942, in the first two actions, and November 4, 1942, in the third action.

---

[1] The companion cases are respectively by the same plaintiff and by Sarkis P. Mosset against the same defendant.

The actions were tried before *Williams*, J.

*C. W. O'Brien*, for the defendant.

*G. B. Rowell*, (*T. A. Scriven* with him,) for the plaintiffs.

WILKINS, J. On January 16, 1942, fire destroyed the building and contents at 173 Broadway, Raynham. The plaintiff Mosset (hereinafter called the mortgagee) held a mortgage on the real estate, and the plaintiff Bedrosian (hereinafter called the owner) was the mortgagor of the real estate and the owner of the personal property. So far as now material, the loss was allegedly covered by two policies issued by the defendant, one for $2,000 on the contents, and another for $6,000 on the real estate. These three actions of contract were brought, two by the owner for the losses on the personal property and real estate respectively, and the third by the mortgagee. The jury returned a verdict for the owner in the personal property action and a verdict of $6,000 and interest in the action by the mortgagee. By order of the judge the jury returned a verdict for the defendant in the owner's action on the real estate policy, as the amount of that policy had been exhausted by the verdict for the mortgagee, and we need not consider that action. The defendant's exceptions which have been argued relate to the denial of its motions for directed verdicts.

The defendant's principal contention is that the policies never became effective contracts. The defendant relies upon *Goddard* v. *Monitor Mutual Fire Ins. Co.* 108 Mass. 56, *Thomas* v. *Commercial Union Assurance Co. Ltd.* 162 Mass. 29, *Bowditch* v. *Norwich Union Fire Ins. Co.* 193 Mass. 565, and *Fall River* v. *Aetna Ins. Co.* 219 Mass. 454. See also *Rice* v. *Norwich Union Fire Ins. Society, Ltd.* 128 N. J. L. 314. Compare *Taylor* v. *Northern Ins. Co.* 42 R. I. 354. The real estate policy contained the clause: "$6000. On the          story frame building . . . while used for dwelling purposes only and designed for occupancy by not more than one families [*sic*]." There was a similar clause in the other policy. The defendant concedes that there was evidence warranting a finding that the building was used for dwelling purposes only, but urges that the building was

unwarrantably found to be one "designed for occupancy by not more than one" family. The structure was "a long frame building set alongside" the main road to Taunton about a mile from a race track, and had "two or two and one half stories." It was occupied by the plaintiff and her husband "as a home dwelling and for no other purpose." The main building was thirty-three feet by twenty-four feet, and was adjoined by an ell twenty-eight feet by sixty feet. There were two front, and two back, entrances. On the first floor of the main building were a "large" living room connected by an arch door with a back parlor; a bedroom, formerly used as a dining room; a bathroom; and a kitchen containing utensils valued at $75. On the second floor were two bedrooms and a bathroom. On the first floor of the ell was a room "as large as two regular parlors" which was once used as a restaurant and "dine and dance place," but was utilized by the owner as a play or card room for parties when relatives and friends came for entertainment without charge. On the second floor were eight small bedrooms.

In 1932 the mortgagee foreclosed a mortgage on the property, which was then known as "Old Homestead." In 1934 and 1935 it was called "Brown Derby" and then "Wayside Inn," and was operated by one Nassau, who held liquor licenses for the last four and one half months of 1934 and for the last month of 1935, and a victualler's license and a Sunday license for the last seven months of 1935. The premises were vacant until 1939, when "some woman" became a tenant for a year and a half. The place was renamed "Wayside Inn," but never opened. The property thereafter was unoccupied until the owner acquired it on April 17, 1941, for the sum of $500 and a purchase money mortgage of $6,000. From 1935 until the fire there were two signs alongside the road, reading "Wayside Inn — Parking front or rear — Tourists welcome-rooms with or without board," and "Rear entrance" with an arrow pointing to the words. There were electric lights attached to the signs which were lighted, at least at times, in the summer of 1941. The jury could have accepted both the testi-

mony of the owner's husband that this was to illuminate the driveway, and the testimony of the owner that no one ever asked for rooms.

The crux of the question is the meaning to be attributed to the word "designed." We have been referred to no case and have found none which is particularly helpful in its interpretation. The language signifies a building architecturally adapted for occupancy by one family. Thus construing the contract, it is our opinion that the judge rightly permitted the jury to find whether the building came within its terms.

The defendant also contends that, contrary to the instructions of the judge, there was evidence from which the jury could have found that "the fire was set by the insured or the mortgagee acting independently, or more probably in collaboration, for the purpose of defrauding the defendant." The burden of proof on this issue was on the defendant. *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391, 393. *Canton Institution for Savings* v. *Orient Ins. Co.* 300 Mass. 243. It is unnecessary to recount this evidence, which falls far short of permitting any such conclusion.

*Exceptions overruled.*