FOURTH STREET PUB, INC. *vs.* NATIONAL UNION FIRE
INSURANCE COMPANY.

No. 88-P-692.

Suffolk. October 18, 1989. - December 21, 1989.

Present: KASS, WARNER, & FINE, JJ.

*Evidence*, Expert opinion, Relevancy and materiality, Presumptions and
burden of proof. *Insurance*, Unfair act or practice, Fire. *Consumer Pro-
tection Act*, Insurance, Unfair act or practice.

At the trial of an action against an insurance company to recover on a
policy insuring the plaintiff against fire damage to its bar, the judge
abused his discretion in excluding certain testimony of the plaintiff's
expert witness which, based on his personal observations of the scene
and an extensive, if not complete, investigation, provided him with ade-
quate knowledge of the facts about the fire to form a meaningful opin-
ion about where the fire started. [161-163] KASS, J., dissenting.
In an action against an insurance company to recover on a policy insuring
the plaintiff against fire damage to its bar, a new trial was required by
the erroneous exclusion of opinion testimony by the plaintiff's expert
witness as to the location of the fire's origin where, given the over-
whelming evidence pointing to the owner of the plaintiff corporation if
the fire had been deliberately set, the plaintiff's expert's testimony of-
fered the plaintiff its only opportunity to suggest an accidental cause,
and where this court could not say with substantial confidence that ad-
mission of the excluded evidence would not have made a material dif-
ference in the jury's verdict. [163] KASS, J., dissenting.
On an insured's claim under G. L. c. 93A against its insurer, seeking dam-
ages for alleged unfair acts by the insurer in handling the insured's
claim, a verdict in the insured's favor was not warranted, where there
was no evidence of fraud, malice, or criminal act on the part of the
insurer in conducting its investigation. [163-164]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 13, 1984.

The case was tried before *John L. Murphy, Jr.*, J., and a
final judgment was entered by *James J. Nixon*, J.

*Harry L. Manion, III* (*Thomas G. Guiney* with him) for the plaintiff.

*Carol A. Griffin* (*Elizabeth M. Fahey* with her) for the defendant.

FINE, J. The plaintiff, Fourth Street Pub, Inc., owned an eating and drinking establishment in South Boston known as the Fourth Street Pub (the bar), which the defendant, National Union Fire Insurance Company, insured against fire loss. On July 17, 1983, the bar was severely damaged by fire. The defendant claimed that Walter Cloyd, owner of the plaintiff corporation, was responsible for setting the fire, and coverage was denied, therefore, on the policy. The plaintiff brought this action in Superior Court seeking recovery of the proceeds of the fire insurance policy and damages under G. L. c. 93A for unfair acts in handling the insurance claim.[1]

The case was tried before a jury. At the close of all the evidence, the judge allowed the defendant's motion for a directed verdict on the c. 93A claim. The jury reached a verdict for the defendant on the claim based on the insurance contract. Judgment was entered for the defendant, with costs in the amount of $34,107.20. We affirm the judgment for the defendant on the c. 93A claim. We agree with the plaintiff, however, that it was prejudicial error for the judge to strike the testimony of the plaintiff's only expert witness.[2] We therefore vacate both the judgment for the defendant on the contract claim and the award of the defendant's costs, and we remand the case to the Superior Court for a new trial on the contract claim.

1. *The expert testimony.* To put the issue in context, we first summarize the evidence at trial relevant to the plaintiff's

---

[1] The plaintiff included a separate count for unfair insurance settlement practices under G. L. c. 176D, § 3(9). The judge allowed a motion for directed verdict at the close of the plaintiff's evidence. The plaintiff does not argue on appeal that that ruling was erroneous.

[2] The plaintiff argues on appeal that there was also prejudicial error in the confusing manner in which the judge dealt with counsel's objections to the rulings on the expert testimony. We need not resolve the issue as the error, if any, is not likely to recur at any retrial.

claim on the insurance policy. Starting in 1961, Cloyd and his wife purchased and renovated a series of restaurants and bars, each of which they owned and operated and then sold at a profit. In 1982, Cloyd purchased the subject property, renovated it, and established the plaintiff corporation as owner of the bar.[3] The plaintiff obtained fire insurance from the defendant and, on September 15, 1982, commenced operation.

Early on the morning of July 17, 1983, Cloyd received a telephone call from his night bartender reporting that he had been the victim of a robbery. Cloyd immediately left his home in Whitman for the bar. He testified that, after surveying the loss in the robbery, he and the bartender left the bar together around 2:00 A.M. (The bartender testified that it was 2:45 or 3:00 A.M.) The doors were secured and padlocked when they left, and there were no windows. Cloyd had the only set of keys. Cloyd stated that he arrived home in Whitman around 3:30 A.M. At 5:30 A.M., he received a telephone call informing him of the fire. He returned to the bar at around 6:00 A.M. Fire fighters testified that, when they first arrived at the scene at around 4:30 A.M., they found all the doors locked and padlocked, and they saw no signs of forced entry. Thus, even on the plaintiff's version of the facts, Cloyd had exclusive access to the premises and was present at the scene at an unusual hour a short while before the fire started.

The defendant produced additional evidence which, taken together with the plaintiff's evidence, would warrant a finding that Cloyd either set the fire himself or arranged to have it set. There was some indication of a motive on Cloyd's part to cause the fire. An accountant testified that the bar business was not profitable, and there was undisputed evidence that the bar had been placed on a cash delinquent list by liquor distributors. Further, expert witnesses for the defendant offered opinions that the fire was set intentionally. They based their opinions on the following factors: four plastic wastebaskets, filled with trash, had been grouped together in

---

[3] Cloyd created a separate trust, the FSP Realty Trust, to own the real estate occupied by the bar.

an area near the men's room of the bar; a toxic odor, possibly from burning plastic, was evident when fire fighters arrived at the scene; "traces" of gasoline were found on carpet samples which had been tested; selected areas of carpeting had been burned; and there were two exaggerated "V-type" burn patterns at the floor level of the bar which were indicative of the presence of a combustible liquid.

Cloyd's defense to the claim of arson was essentially a denial that he had set the fire or that he had a motive to do so. He testified that he had substantial assets apart from the bar. He and other witnesses testified that the bar was doing well financially and that he had an agreement to sell it at a profit.

The plaintiff also produced an expert witness, James B. Smith, who had considerable experience in investigating fires. The judge found him qualified by his training and experience to provide expert opinions on the causes of fires, and the defendant does not dispute that finding on appeal. Smith testified that he first saw the burned building on October 13, 1983. He spent eighty hours investigating the fire, seventeen of them making observations at the scene which, understandably, had altered in appearance from the night of the fire. He also spoke to Cloyd, met with the defendant's experts, reviewed fire department reports, met with fire department personnel, and performed some combustibility testing. Based upon his investigation, Smith stated his opinion, over the defendant's objection, that the fire started in the concealed space above the drop ceiling and below the roof and spread through the bar as a result of small drop fires. In particular, he was influenced by observations of differentiation in the severity of charring in adjacent areas of the joists above the building's dropped ceiling. He claimed that the ceiling, suspended from the joists by steel rods, would have equalized exposure from a fire started below, and he concluded that such differentiation was probably the result of a fire originating above the ceiling. He stated that black smoke, which emitted from the eaves during the fire, was consistent with a conflagration originating in the ceiling area. In short, instead

of being set, according to Smith's testimony, the fire started accidentally.

On direct examination, Smith did not state an opinion that the fire was caused electrically. The defendant cross-examined him at length. Some of defense counsel's questions on cross-examination assumed that Smith was of the opinion that the fire was of electrical origin, and Smith responded in such a way as to suggest that, indeed, he had such an opinion.

At the close of the plaintiff's evidence, the judge allowed a defense motion to strike Smith's testimony. He stated his reasons[4] in some detail, concluding that "although [Smith] may be an expert in theory, he did not apply his expertise to this case . . . ."

In addition to possessing the necessary knowledge and experience to qualify as an expert in a particular field, if a witness is to be allowed to testify as to his opinion, he must have sufficient familiarity with the particular facts to reach a meaningful expert opinion. See *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 211 (1982); Liacos, Massachusetts Evidence 114 (1981). The relevant distinction is between an opinion based upon speculation and one adequately grounded in facts. Although a trial judge has some discretion in making that distinction, it may be an abuse of discretion to disallow expert testimony which is based upon reasonably adequate familiarity with the facts. See *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. 666, 671 (1959); *Haven* v. *Brimfield*, 345 Mass. 529, 531

---

[4]The judge's reasoning was as follows:

"Smith testified that he did not look for traces of gasoline; he did not see the electric panel; he did not interview employees of the pub or the fire department personnel that responded to the alarm; that Mr. Cloyd would not authorize the funds necessary to do complete investigation; that he never spoke with the electrician; he did not know where the wire led to that he brought into court and was admitted in evidence, did not know where it started or where it terminated; that he had no authorization to take a floor sample and submit it to scientific test by way of the gas chromatograph; that he never found the wire where the fire started."

(1963). Compare *Ponder* v. *Warren Tool Corp.*, 834 F.2d 1553, 1557 (10th Cir. 1987), based upon Fed.R.Evid. 703. As Smith based his opinion on his personal observations of the scene and an extensive, if not complete, investigation, we think he had adequate knowledge of the facts about the fire to form a meaningful opinion about where the fire started.

The reasons given by the judge are insufficient to justify the ruling. Compare *Dixon* v. *International Harvester Co.*, 754 F.2d 573, 579-580 (5th Cir. 1985). See 2 Wigmore, Evidence § 662 (Chadbourn rev. 1979). In at least one respect the judge did not quite accurately state the evidence: although he did not speak to one of the fire fighters until the day of the trial and spoke to another either a few days or a few weeks before, but well after he had formed his opinion, Smith *did* interview fire department personnel. In another respect, the reason given was irrelevant: while it is true that Cloyd did not authorize Smith to do his own testing for the presence of gasoline, and Smith did no such testing, in forming his opinion Smith accepted the fact that the chemical testing done for the defendants revealed "traces" of gasoline on the carpet but regarded that fact as insignificant. In all other respects, the reasons advanced by the judge related either to factors that would affect the weight or credibility of the opinion and not its admissibility, see *Carey* v. *General Motors Corp.*, 377 Mass. 736, 741-742 (1979), or they were based upon the assumption that the plaintiff was seeking, through Smith, to establish that the fire was electrical in origin.

It certainly would have been better for Smith to perform a more thorough investigation, as he himself admitted on cross-examination, particularly with respect to possible electrical causes. Given the limited nature of the opinion Smith gave in his direct testimony (that the fire started above the closed ceiling), however, the failure to investigate more extensively ought only to have affected the weight to be accorded the expert opinion by the jury. What inadequacies there were in the investigation were brought to the jury's attention by the defendant in cross-examination. We conclude that it was an

abuse of discretion for the judge to strike Smith's expert opinion.

The erroneous exclusion of expert testimony does not warrant a new trial unless the substantial rights of a party are adversely affected. See *DeJesus* v. *Yogel*, 404 Mass. 44, 47-48 (1989); G. L. c. 231, § 132; Mass.R.Civ.P. 61, 365 Mass. 829 (1974). Exclusion of relevant evidence, however, "is reversible error unless, on the record, the appellate court can say with substantial confidence that the error would not have made a material difference." *DeJesus, supra* at 49. Although the evidence for the defendant, over-all, was strong, we are unable to say with confidence that Smith's opinion might not have made a difference with the jury.

To avoid liability on the fire insurance policy, it was the defendant's burden to prove that Cloyd was responsible for setting the fire. See *Richardson* v. *Travelers Ins. Co.*, 288 Mass. 391, 393 (1934); *Bedrosian* v. *Eureka-Security Fire & Marine Ins. Co.*, 318 Mass. 713, 716 (1945); *McGinnis* v. *Aetna Life & Cas. Co.*, 398 Mass. 37, 38 (1986). Given the overwhelming evidence pointing to Cloyd if the fire had been deliberately set, the plaintiff's only reasonable defense was to show that the fire started accidentally while no one was present at the bar. Smith's opinion was that the fire started above the ceiling, inferably without human intervention. Thus, if believed, Smith's testimony would have countered the theory of the defendant's experts and established the likelihood of an accidental cause. Smith's testimony offered the plaintiff its only 'opportunity, in the face of expert testimony on behalf of the defendant, to suggest, through its own qualified expert, an accidental cause. Compare *Muzi* v. *Commonwealth*, 335 Mass. 101, 106 (1956). Given the fact that the defendant had the burden of proof, Smith's opinion, considered along with Cloyd's testimony denying that he played a role in starting the fire and disputing the facts relating to the financial motive attributed to him, might have influenced the jury in the plaintiff's favor.

2. *The Chapter 93A claim*. We do not agree with the plaintiff that a verdict in its favor was warranted on the

c. 93A claim. Viewing the evidence most favorably to the plaintiff, it establishes at most that Cloyd understood that the claim was proceeding smoothly in the months following the fire, causing him to delay obtaining the services of an expert until October. There is no indication that the defendant's investigation of the fire was not reasonable in the circumstances or that anyone on the defendant's behalf made any misrepresentation to Cloyd. By itself, the failure of the defendant to inform Cloyd that "traces" of an accelerant were found on the carpet before October was of no significance. The finding of such "traces" was not a sufficient basis for the defendant to conclude that the fire had been set. The plaintiff simply failed to produce evidence, as required for a c. 93A recovery, that the defendant failed to conduct its investigation with reasonable "candor and fairness." *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 452-456 (1985). See *Wallace* v. *American Manufacturers Mut. Ins. Co.*, 22 Mass. App. Ct. 938, 939 (1986). Compare *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 599 (1975); *Boston Symphony Orchestra* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14-15 (1989); *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

Nor was it unfair or improper for the defendant's investigator to inform the United States Bureau of Alcohol, Tobacco and Firearms about the fire. The defendant had a reasonable basis for suspecting arson. In any event, "[i]n the absence of fraud, malice or criminal act, no insurance company . . . shall be liable for damages in a civil action" for furnishing information to law enforcement agencies in cases of suspected arson. G. L. c. 148, § 32, as appearing in St. 1985, c. 322. There was no evidence of fraud, malice, or criminal act on the part of the defendant.

The judgment on Counts II and III, based on G. L. c. 93A and G. L. c. 176D, respectively, is affirmed. In other respects, the judgment is reversed, and the case is to stand for a new trial.

*So ordered.*

KASS, J. (dissenting). As a general rule, the imperfections exposed in the testimony of an expert witness go merely to the weight to be ascribed by the jury to the expert's evidence. *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. 666, 670-671 (1959). *Haven* v. *Brimfield*, 345 Mass. 529, 531 (1963). That is the not inconsiderable basis on which the majority opinion rests. On the other hand, it is also a familiar principle that testimony may not rest wholly on conjecture, and that is no less the case when the conjecture flows from the mouth of an expert. *Nass* v. *Duxbury*, 327 Mass. 396, 401 (1951). *Currie* v. *Lee Equip. Corp.*, 362 Mass. 765, 768 (1973). *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 633 (1978). *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32 (1979). See *Reed* v. *Canada Dry Corp.*, 5 Mass. App. Ct. 164, 166 (1977). Qualification as an expert does not confer a license to spout nonsense.

On cross-examination, the opinion of James B. Smith, the expert witness in question, was revealed as founded on no theory about the origin of the fire and on an investigation that was singular for the degree to which it avoided the more obvious sources of information. In the circumstances, the trial judge might understandably come to the conclusion that Smith's opinion had been what trial lawyers call "carpentered." Smith said the fire originated in the space between the dropped ceiling and the structural ceiling above. What would have caused a fire to start there he did not venture to say except to suggest obliquely that it might have been electrical wiring. Yet he had not examined the circuits, the circuit breaker board, or talked to an electrician. As the judge also observed, Smith had not tested for gasoline on the rug, a likely subject of inquiry considering that the use of gasoline as an accelerant had been asserted by the insurance company.

Battles of experts at trials are justly the subject of cynicism but as long as expert testimony is founded on a combination of theory and observed facts there is not much help for it, and we trust to the common sense of juries. The placement of such trust, however, does not require us to presume

upon it. If, as the cases instruct, expert testimony may be excluded if it rests on speculation, then surely it may be struck when cross-examination demonstrates such to be the case. I understand that the line between testimony based on speculation and that which is merely vulnerable to attack is often indistinct. Precisely in such a situation I would be prepared to rely on the training and experience of the trial judge and would tolerate discretion in making the call. I do not think such discretion was abused in this case, and I would affirm the judgment.