Connolly, J.
On April 18, 1991, a fire occurred at the plaintiffs’, Shaun and Karen Driscoll (the “Driscolls”), home at 67 Salem Street in Swampscott, Massachusetts. The Driscolls had an insurance policy with the defendant, Liberty Mutual Insurance Company (“Liberty”), at the time of the fire. Subsequent to the fire loss, the Driscolls submitted a fire insurance claim to Liberty for the amount of their policy limits. Liberty tendered two advance payments to the Driscolls in the amounts of five thousand dollars ($5,000.00) and four thousand eight hundred dollars ($4,800.00) shortly after the claim was received. Moreover, during the period in which Liberty investigated the cause of the fire, the Driscolls’ mortgagee submitted a claim to Liberty for the balance of the Driscolls' mortgage. The mortgage was adjusted with Liberty making a payment in the amount of twenty-eight thousand one hundred eighty-seven dollars and forty-seven cents ($28,187.47) to the mortgagee. Liberty obtained a full assignment of the mortgage and note, but made no demands on the Driscolls for the full or partial payment of the mortgage.
In the Driscolls’ initial recorded statement, they reported that the fire loss might have been the result of a defective or malfunctioning television set. Therefore, Liberty retained the services of the law firm Cozen & O’Connor to investigate the possibility of a subrogation claim.
On May 1, 1991, Cozen & O’Connor requested that Charles Small, an electrical engineer with several years of experience, perform a site inspection to determine whether the television set, electrical appliances or any electrical malfunction caused the fire. Mr. Small concluded that the fire was not electrical in nature and recommended that an investigator be retained to determine the actual cause of the fire.
Richard Splaine, a Certified Fire Investigator, was retained to inspect the premises and determine both the cause and origin of the fire. On May 21,1991, Mr. Splaine inspected the home and observed unusual burn and char patterns which aided him in forming the opinion that the fire had been intentionally started by the introduction of an accelerant. Mr. Splaine took fire debris samples from the premises which he submitted to Joseph Murphy, a forensic chemist, who performed a chemical analysis on the samples. The chemical analysis confirmed the presence of accelerants.
As a result of Richard Splaine’s findings, Liberty retained the services of Martin A. Durkin, Jr., an attorney from Cozen & O’Connor, who specializes in the area of fire investigation. On July 10, 1991, Attorney Durkin examined the Driscolls under oath regarding issues of their financial status on the date of the fire, their whereabouts on the date of the fire, the security of the premises, and their responsibility for the fire loss. Moreover, Attorney Durkin hired Daniel Cronin and Daniel Scribner of Phoenix Investigations to investigate these issues. The investigation took place between July 10, 1991 and October 19, 1991. A report, dated October 23, 1991, set forth the findings of Phoenix Investigations. The report also included copies of documents such as bank records, credit reports, documents from Mr. Driscoll’s disability insurance carrier and various documents pertaining to the Driscoll’s mortgage and motor vehicles.
On October 4,1991, Attorney Durkin sent a twenty-six page letter to Liberty setting forth a summary of relevant facts and circumstances, his analysis, and recommendation that Liberty had a sufficient legal basis to deny liability for the claim by asserting the intentional act policy exclusion and a breach of the insurance policy’s concealment or fraud condition. Attorney Durkin based his recommendation on the expert reports and findings of Charles Small, Richard Splaine, Phoenix Investigations and the Driscolls’ testimony during their examination under oath.
Liberty, through Attorney Durkin, sent a letter to the Driscolls’ public adjuster, Harvey Rowe, explaining the basis for denying the Driscolls’ claim. On December 10, 1992, the Driscolls forwarded a demand for relief to Liberty pursuant to G.L.c. 93A. Liberty responded to the Driscolls’ demand letter on January 8, 1993, denying that it engaged in any conduct prohibited by G.L.c. 93A.
The Driscolls filed suit against Liberty challenging the denial of their insurance claim and asserting an extra-contractual cause of action pursuant to G.L.c. 93A. This Court bifurcated the breach of contract claim from the G.L.c. 93A and G.L.c. 176D claims. On February 24, 1995, the jury entered a verdict for the Driscolls on the breach of contract claim.
RULINGS OF LAW
The Massachusetts consumer protection statute prohibits “unfair or deceptive acts or practices in the conduct of any trade or commerce . . .” G.L.c. 93A, §2(a). “Commonwealth law contains a similar ban against such conduct in the insurance industry.” Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 839 (1st Cir. 1990) citing G.L.c. 176D, §2. That prohibition extends to unfair insurance claim settlement practices, which the statute defines as including:
(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
*624 (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering less than the amounts ultimately recovered in actions brought by such insureds.
G.L.c. 176D, §3,(9)(d), (e), (f), and (g). “Those injured by insurance practices proscribed under chapter 176D may sue under chapter 93A.” Peckham v. Continental Cas. Ins. Co., 895 F.2d at 839, citing Equitable Life Assurance Society of the United States v. PorterEnglehart, 867 F.2d 79, 88 (1st Cir. 1989); Whyte v. ConnecticutMut. Life Ins. Co., 818F.2d 1005, 1010-11 (1st Cir. 1987); VanDykev. St. Paul Fire & Marine Ins., 388 Mass. 671 (1983).
In support of their claim that Liberty committed unfair claim settlement practices in violation of G.L.c. 176D, §3(9)(d), (e), (f), and (g) and G.L.c. 93A, the Driscolls allege, in part, that Liberty failed to conduct a reasonably complete and accurate investigation. However, in evaluating whether an insurer is liable under G.L.c. 93A, “(a]U that is required is that the insurer deal with its insured with candor and fairness.” Trempe v. Aetna Casualty & Surety Co., 20 Mass.App.Ct. 448,455 (1985). “(A]n insurer [need not] forgo a thorough investigation of a claim that it has a reasonable basis for regarding as suspicious or run the risk of a c. 93A complaint.” Id. In reviewing the manner in which Liberty processed the Driscolls’ claim, this Court is mindful that Liberty had a reasonable basis for resisting liability even though the ultimate result was adverse to its position on that issue. Trempe, 20 Mass.App.Ct. at 452.
There is no indication from the evidence that Liberty’s investigation of the fire was unreasonable under the circumstances or that anyone on behalf of Liberty acted in bad faith. Liberty retained qualified experts and counsel to assist it in its investigation of the Driscoll’s claim. As previously mentioned, these experts included: Charles Small, an electrical engineer; Richard Splaine, a certified Fire Investigator with years of experience; Joseph Murphy, a forensic chemist; Daniel Cronin and Daniel Scribner of Phoenix Investigators; and Martin Durkin of Cozen & O’Connor, an attorney who specializes in the area of fire investigations. Based on the investigations of these experts and the legal analysis and recommendations of Attorney Durkin, it was concluded that Liberty had a sufficient legal basis in which to deny liabiliiy for the claim by asserting the intentional act policy exclusion and a breach of the insurance policy’s concealment or fraud condition. Liberty, as the insurer, is both encouraged and entitled to rely, as it did, on the advice of expert consultants and trial counsel in evaluating the prospect of success at trial. Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 677 (1983).
Since the Driscolls did not produce evidence, as required for a G.L.c. 93A recovery, which establishes that Liberty failed to conduct its investigation with reasonable “candor and fairness,” Liberty is not be subject to liability. Fourth Street Pub, Inc. v. National Union Fire Ins. Co., 28 Mass.App.Ct. 157, 164 (1989), citing Trempe v. Aetna Casualty & Surety Co., 20 Mass.App.Ct. at 455.
In addition to acting with candor and fairness, Liberty is required to expeditiously handle the claim. Trempe v. Aetna Casualty & Surety Co., 20 Mass.App.Ct. at 455. However, this requirement does not infringe upon Liberty’s right to conduct its investigation into the possibility that the Driscolls were involved in setting the fire. Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Association, 399 Mass. 886, 897 (1987). Liberty investigated the matter expeditiously, considering the experts retained and the breadth of the investigation conducted by these experts. The fire occurred on April 18, 1991. Since the Driscolls initially reported that the fire loss might have been the result of a defective or malfunctioning television set, Liberty immediately hired the law firm of Cozen & O’Connor to investigate the possibility of a subrogation action. The law firm retained the services of Charles Small, an electrical engineer, who conducted a site inspection on May 1, 1981. As a result of his inspection, Mr. Small determined that the fire was not electrical in nature. Thereafter, Liberty hired Richard Splaine, a Certified Fire Investigator, to determine the actual cause of the fire. On May 21, 1991, Mr. Splaine inspected the premises and concluded that the fire had been intentionally set by the introduction of an accelerant. Fire debris samples were submitted to Joseph Murphy, a forensic chemist, who confirmed the presence of accelerants.
Given the findings of Mr. Splaine, Liberty retained the services of Attorney Durkin to direct and oversee an investigation into the facts and circumstances surrounding the fire loss and to provide a legal analysis and recommendation on the issue of Liberty’s liability. On July 10, 1991, Attorney Durkin examined the Driscolls under oath and also met with Daniel Cronin and Daniel Scribner of Phoenix Investigations to instruct them on conducting certain investigative tasks including, the obtaining of the Driscolls’ financial records, credit reports, and the verification of the whereabouts of Mr. Driscoll at the time of the fire. The Phoenix Investigators' investigative activities commenced on July 10, 1991 and lasted until October 19, 1991. On October 24, 1991, Liberty sent a letter to the Driscolls’ adjuster setting forth the basis for the denial of their claim.
After reviewing the facts, this Court holds that Liberty’s delay in deciding not to pay the full amount of the Driscolls’ policy limits was not a violation of c. 93A.[2] Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Association, 399 Mass. 886, 897 (1987). Liberty exercised its right to investigate the *625 possibility that the Driscolls were involved in setting their home on fire before releasing all the insurance proceeds and it did so expeditiously, without any unnecessary delays.
The Driscoll’s contention that liberty violated G.L.c. 176D and G.L.c. 93A because it failed to tender any offer of settlement is also unwarranted. An insurer need not make an offer to settle where the information available to it “suggest(s) a reasonable prospect of success at trial.” Van Dyke, 388 Mass, at 677. Liberty received independent advice from experts and counsel indicating that Liberty had a sufficient legal basis to deny liability of the Driscolls’ claim. Accordingly, Liberty chose to defend the claims against it rather than settle the matter. Based on these facts, Liberty did not engage in any deceptive or any unfair conduct in violation of G.L.c. 176D, §3(9) (d) or (f) by refusing to settle. Cullen Enterprises, Inc., 399 Mass, at 896, 897; Van Dyke v. St Paid Fire & Marine Ins. Co., 388 Mass. 671 (1983).
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for defendant, Liberty Mutual Insurance Company.

Shortly after the fire loss, the Driscolls'submitted a fire insurance claim to Liberty for the amount of their policy limits. Almost immediately thereafter, Liberty tendered two advance payments to the Driscolls in the amounts of $5,000.00 and $4,800.00.
Moreover, during the period encompassing Liberty’s investigation, the Driscolls’ mortgagee, Eastern Bank, submitted a claim to Liberty for the balance of Driscolls’ mortgage. This mortgagee claim was promptly adjusted with Liberty making payment in the amount of $28,187.47 to Eastern Bank. Liberty obtained a full assignment of the mortgage and note, but made no demands whatsoever on the Driscolls for full or partial payment of the mortgage.