NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-356

CAROLYN S. ELMORE

vs.

JAMES F. ELMORE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2021 James Elmore (father) filed a complaint for modification of a 2015 divorce judgment, seeking to reduce or terminate his child support obligation to Carolyn S. Elmore (mother) on the ground that the parties' two grown daughters were emancipated. The mother counterclaimed, seeking to reduce or terminate her obligation to pay alimony and provide life insurance for the father. Following a three-day trial in the Probate and Family Court, the judge issued a modification judgment in favor of the father, reducing his child support obligation and leaving the mother's alimony and life insurance obligations undisturbed. The mother timely filed a motion for a new trial under Mass. R. Dom. Rel. P. 59, which was denied, an order from which the mother also timely appealed. On appeal the mother claims that the judge violated her procedural due process

rights by adhering to a previously-issued temporary order, quashing her discovery requests, and denying her motion to present expert testimony and related documents at trial. We affirm.

Background. The parties were involved in contentious divorce proceedings, which resulted in the entry of a judgment of divorce in 2015. Shortly thereafter, the parties filed complaints for contempt and modification, with numerous associated motions, prompting the judge assigned to hear those matters to enter a temporary order dated September 20, 2016, requiring the parties to seek permission of the court before filing additional pleadings or motions. About one month later the parties jointly moved to dismiss the pending claims. Although the temporary order was addressed to the anticipated trial on the matters then pending, neither party moved to vacate it, and both parties continued to abide by its terms in subsequent proceedings.

Thus, when the father filed his current complaint for modification, he also filed a motion for permission to file it, which was granted. The mother responded by filing an answer and her counterclaim, without first seeking permission. At the same time, the mother served the father with twenty-six interrogatories and sixty-one requests for production of documents with respect to the years 2016 through 2021. In

addition, she served seven recordkeeper deposition notices (on the husband's bank, employer, accountant, and mortgage lenders) seeking documents for the same five-year period, and a notice of deposition on the father's girlfriend.  The father asked the court's permission to file a motion to dismiss the mother's counterclaim and to file a motion to quash and for a protective order.  The judge granted the father permission to file his motions and scheduled them for hearing on the date of the already-scheduled pretrial conference.[1]

The father's motions were addressed at the pretrial conference.  The father argued that his complaint for modification was very simple, that the matters before the court could be decided on the financial documents already available to the mother, and that the mother's discovery requests were part of a recurring pattern of over-litigating.  The mother argued that the discovery was relevant to the father's request to terminate his child support obligation -- which turned primarily on whether the parties' younger daughter, who was twenty years old, had the ability to work full-time.[2]  The judge allowed the

---

[1] In response to the father's motion to quash, the mother filed a motion for permission to file a dueling motion to compel.  On the same day that the judge scheduled the father's motions for hearing, she denied the mother permission to file the motion to compel.  The mother did, however, file a comprehensive opposition to the motion to quash.
[2] The judge ultimately ruled that the daughter would be considered emancipated on her twenty-first birthday, and that

motion to quash, noting that the parties' financial statements were "signed under pains and penalties of perjury" and that the mother had more financial resources available than the father.

As to the father's motion to dismiss the mother's counterclaim, the father argued, among other things, that the mother had failed to seek permission to file it. The mother argued that the temporary order requiring permission for filing dissolved when the parties' 2016 complaints were dismissed. The judge disagreed, stating that such orders remain in effect once they are issued, as the parties' subsequent conduct confirmed. The judge nonetheless denied the father's motion to dismiss and allowed the mother to proceed on her counterclaim. Noting that the father had estimated the trial would take thirty minutes, the judge asked the mother's counsel how long she anticipated the trial would last. When mother's counsel answered "two days," the judge responded, "No. It's not going to take two days to try this case." The judge ordered the parties to return at 3 P.M. for trial.

The mother filed an emergency motion to continue the trial (accompanied by a motion for permission to file the motion). The judge denied the mother's motion, stating that "this seems like a very simple complaint for modification and simple issues,

_____

the father's child support obligation would be reduced to $74 per week until then.

4

and for Court's efficiency and time I believe that all parties are better served to have this trial today." Before the second day of trial, the mother sought permission to file an emergency motion in limine to be permitted to call two expert witnesses, a vocational expert and an accounting expert, to establish that the father's income was higher than he represented in his financial statement. The judge denied the motion on the ground that the presentation of previously-undisclosed expert testimony would be prejudicial to the father and because the judge did not believe the mother "need[ed] to over litigate this with experts." On the third day of trial the mother discussed presenting a third expert to rebut the husband's testimony about the state of the real estate market, and she filed an offer of proof regarding the proposed testimony of all three experts. She also sought to introduce documents concerning the value of the properties that the father had sold as a real estate agent, which the judge excluded, partly on hearsay grounds.

Discussion. 1. The temporary order. The mother argues on appeal that the judge erred by enforcing the temporary order because it had expired by its own terms and, if it was still in effect, the order deprived her of access to the courts. Putting aside the fact that the mother never moved to vacate the temporary order, she has not shown prejudice, or any due process violation, arising from the temporary order. See Mass. R. Dom.

Rel. P. 61 (identical to Mass. R. Civ. P. 61, 365 Mass. 829 [1974]).  In the only context in which the mother questioned the order's continuing validity -- her opposition to the father's motion to dismiss the counterclaim -- she prevailed.  Although she was not permitted to file her motion to compel discovery, she had a full and fair opportunity to oppose the father's motion to quash, see note 1 supra, which raised identical issues.  Similarly, although she was not given permission to file her motion to present expert testimony, as discussed below, the judge denied that motion on grounds unrelated to the temporary order.  The existence of the temporary order did not interfere with the mother's ability to litigate the father's complaint or her counterclaim, or in any way deprive her of meaningful access to the court.

2.  Discovery.  As noted, the mother made sixty-one requests for production of documents and propounded twenty-six interrogatories on the father, sought to obtain records from seven business entities, and also sought to depose the father's girlfriend about details of the father's finances since the entry of the divorce judgment.  These requests were made in the context of divorce proceedings that had already been so contentious that the parties were required to obtain leave of the court before filing papers.

Under Mass. R. Dom. Rel. P. 26 (c) (identical to Mass. R. Civ. P. 26 [c], as amended, 474 Mass. 1401 [2016]), "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the discovery not be had" or limiting the scope of discovery. Likewise, under Mass. R. Dom. Rel. P. 45 (b) (identical to Mass. R. Civ. P 45 [b], as appearing in 470 Mass. 1402 [2015]), the court may, upon motion, quash or modify a request for documents from a third party if the request is "unreasonable and oppressive." "Trial judges have broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial" (quotation and citation omitted). Mattoon v. Pittsfield, 56 Mass. App. Ct. 124, 131 (2002).

Faced with the mother's argument that the discovery she requested was necessary to address the question of child support, the judge reasonably concluded that the matter could be decided based on the parties' financial statements. As the judge noted, the trial presented "simple issues," and she was "not going to let this get out of hand and make it something bigger than it actually is." The mother did not respond by proposing more reasonable, targeted, or limited discovery. In

7

these circumstances, in a case in which the mother undeniably had more financial resources available than the father and was using those resources in a manner that the judge found to be unreasonable and oppressive, we discern no abuse of discretion in the allowance of the father's motion to quash and for a protective order.

3. Expert testimony. The mother argues that the judge abused her discretion by precluding the mother from calling expert witnesses to testify at trial. "The decision to exclude expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or other error of law." Palandjian v. Foster, 446 Mass. 100, 104 (2006). In denying the mother's requests, the judge explained that allowing the mother to present expert testimony not previously provided to the father and designated in her pretrial memorandum only as "expert witnesses as needed" would be "highly prejudicial to him, because he can't counter any experts, because he doesn't have time." See Elias v. Suran, 35 Mass. App. Ct. 7, 10 (1993) ("a trial judge has broad discretion in deciding whether to permit expert testimony when the proponent has not given proper notice of the identity of the expert or the subject matter of the expert's anticipated testimony"). We discern no abuse of discretion.

8

4. Prejudice. Even if we were to conclude that the judge abused her discretion in quashing the mother's discovery requests and excluding her proffered expert testimony, the mother is unable to show that her inability to minutely challenge the father's financial statement caused her prejudice. See Solimene v. B. Grauel & Co., 399 Mass. 790, 799 (1987) (in reviewing discovery orders "we do not interfere with the judge's exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion"); Fourth St. Pub, Inc. v. National Union Fire Ins. Co., 28 Mass. App. Ct. 157, 163 (1989) ("The erroneous exclusion of expert testimony does not warrant a new trial unless the substantial rights of a party are adversely affected").

"To be successful in an action to modify a judgment for alimony . . . the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment" (citation omitted). Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 772 (2014). "In determining whether a payor has met his or her burden of demonstrating a material change in circumstances warranting a downward modification of alimony, it is well settled that a judge must consider the totality of the payor's financial circumstances, including his or her income and available assets." Dolan v. Dolan, 99 Mass. App. Ct. 284, 289 (2021).

Here, based on the financial statements, the judge found no material change since the entry of the divorce judgment, in the father's income or in the mother's ability to pay, that would warrant a reduction of alimony. The judge found the father's income to be $22,054.24 annually, not including alimony, which was less than the income of $27,000 imputed to him at the time of the divorce judgment. According to the mother's offer of proof, her vocational expert would testify that the father's earning capacity as a real estate agent was from $80,000 to $87,000 annually, about $50,000 more than the father claimed he earned. Her proffered real estate agent testimony and proffered documents concerning the properties the father sold as an agent would presumably support her claim that the father's financial statements understated his earnings.[3]

The judge found the mother's income to be $935,054.12 annually, a sum far greater than the income of $350,000 used to calculate her alimony obligation.[4] The judge found that "there

---

[3] The mother also proffered accounting expert testimony that, based on the tax payments reported in the father's financial statement, his gross earnings in 2020 were at least $175,000, including alimony received. As the father received alimony payments of $106,590.12 in 2020, this would result in earnings of less than $70,000.

[4] In a footnote, the mother argues that the judge's focus on the mother's increased income was misplaced because the father had been receiving equalizing payments based on the value of the mother's law practice. We disagree. The equalizing payments were based on the division of the parties' assets, not on the mother's income from her law practice.

10

was a disparity in the parties' income" at the time of the divorce judgment, and that "there continues to be a disparity in the parties' current income."  Even if we assume that the father's income had increased to as much as $87,000, the gross disparity in the parties' relative resources remained.  We are confident that even if the mother had been permitted to present expert testimony and evidence concerning the father's earnings, it would not have made a material difference in the outcome of the trial.

Conclusion.  We recognize that the trial judge placed rather extreme limits on the mother's ability to conduct discovery and present evidence at the trial.  However, the judge acted in the context of a protracted divorce contest that had, over the course of many years, burdened the Probate and Family Court and several of its judges.  In such circumstances, we accord substantial deference to the trial judge's decisions concerning how to manage the docket and control the proceedings, and based on the record as a whole, the judge's restrictions appear commensurate with the nature and complexity of the issues before her.  Moreover, even as restricted, the modification trial carried over three days, and the mother had ample opportunity to cross-examine the father and present her own

11

testimony.  We discern no abuse of discretion affecting the mother's substantial rights or requiring a new trial.

Modification judgment
  affirmed.

Order denying motion for new
  trial affirmed.

By the Court (Massing,
  Sacks & Walsh, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  March 24, 2023.

---

[5] The panelists are listed in order of seniority.