14                                    61 Mass. App. Ct. 14 (2004)

Capital Site Management Associates *v.* Inland Underwriters Insurance Agency, Ltd.

CAPITAL SITE MANAGEMENT ASSOCIATES & another[1] *vs.*
INLAND UNDERWRITERS INSURANCE AGENCY, LTD.

No. 01-P-1779.

Suffolk. September 15, 2003. - April 27, 2004.

Present: GELINAS, GREEN, & TRAINOR, JJ.

*Broker,* Insurance. *Contract,* Insurance agency, Performance and breach.
*Insurance,* Fire, Coverage, Vacant property exclusion. *Damages,* Replace-
ment or reconstruction, Interest.

In a civil action, an insurance broker's failure to investigate conditions it
knew would invalidate the renewal of a blanket fire insurance policy
covering the plaintiffs' property properly stood as a basis for the broker's
liability in contract for the fire destruction of a residential building on that
property, and the fact that the broker received no separate consideration,
apart from ordinary commissions, to provide advice to the plaintiffs was
inconsequential [16-18]; further, the trial judge should have awarded dam-
ages based on the value of the building, not on its replacement cost [18-20],
and should have determined the date on which the plaintiffs submitted their
claim under the policy and awarded interest from the date thirty days fol-
lowing that submission date [20].

CIVIL ACTION commenced in the Superior Court Department on
August 27, 1996.

The case was heard by *Ernest B. Murphy,* J.

*Evan T. Lawson* (*J. Mark Dickison* with him) for the plaintiffs.

*Andre A. Sansoucy* for the defendant.

GREEN, J. At the plaintiffs' request, the defendant Inland
Underwriters Insurance Agency, Ltd. (Inland), arranged in
September, 1990, for the renewal of a blanket fire insurance
policy covering numerous commercial properties owned by the
plaintiffs, including property located at 418 Worcester Road in
Wellesley (Wellesley property). At the time of renewal the
Wellesley property had been vacant for more than sixty days,

[1]Kevin Hartigan, as trustee of the 418 Worcester Wareland Realty Trust.

thereby excluding it from coverage under the terms of the policy. None of the individuals involved in the policy renewal was aware that the property was vacant. On October 27, 1990, fire destroyed the residential building located on the property. After attempting unsuccessfully to recover under the policy, see *Pappas Enterprises, Inc.* v. *Commerce & Indus. Ins. Co.*, 422 Mass. 80 (1996), the plaintiffs brought the present complaint, claiming negligence and breach of contract. After a jury-waived trial, a judge of the Superior Court ruled that the negligence claim was barred by the statute of limitations but that Inland was liable for damages in contract. Inland has appealed the finding of liability, the measure of damages, and the calculation of interest.[2] We affirm the judgment on liability, but conclude that the trial judge erred in his determination of damages and interest.

*Background.* We summarize the judge's findings pertinent to the plaintiffs' contract claim.[3] The plaintiffs are affiliates of entities controlled by James Pappas. Inland is an independent insurance broker which handled the majority of Pappas's insurance coverage for more than twenty-five years. The plaintiffs acquired the Wellesley property, which consisted of two and one-half acres of land, improved by a single-family wood frame dwelling, in late 1986, with the intention of obtaining permits to develop it as a multi-family affordable housing project.[4] At the time the plaintiffs acquired the Wellesley property, the dwelling was occupied by two tenants under a lease. However, the property became vacant in May, 1989, and remained unoccupied thereafter.[5]

In 1988, the Pappas companies asked Inland to procure insur-

---

[2] The plaintiffs filed no cross appeal challenging the judge's determination of the statute of limitations bar on their negligence claim.

[3] The judge's findings incorporate various stipulations entered into by the parties.

[4] Title to the property was held by plaintiff Kevin Hartigan, as trustee of the 418 Worcester Wareland Realty Trust, in which Capital Site Management Associates (Capital) held the beneficial interest. Capital was a single purpose partnership, formed for the purpose of owning the Wellesley property pending its proposed development for multi-family affordable housing under G. L. c. 40B. Incident to the proposed development, Capital planned to move the single-family dwelling to a different location.

[5] The judge found that the plaintiffs planned to relocate the single-family dwelling once it began construction of the proposed multi-family project.

ance coverage on twenty-two commercial properties, including the Wellesley property. Pursuant to that request, and through Inland's services, Commerce & Industry Insurance Company (Commerce) issued a "blanket" insurance policy on September 1, 1988, covering the twenty-two properties. The policy had a term of one year.

The policy by its terms excluded from coverage any property that became and remained vacant for a period of more than sixty days. During the summer of 1989, as the policy approached renewal, Commerce became aware that three properties scheduled under the policy (other than the Wellesley property) were wholly or partially vacant. Commerce wrote to Inland on August 14, 1989, to express its unwillingness to include vacant properties within the coverage provided under the renewal policy. Negotiations between Inland and Commerce on the subject of coverage for vacant properties continued through the issuance of the renewal policy. Eventually, Commerce agreed to provide coverage for several of the vacant properties.

Though the Wellesley property was vacant at the time of the 1989 policy renewal, Inland did not ask the plaintiffs about the occupancy of the Wellesley property, and Commerce did not learn that the Wellesley property was vacant. Accordingly, Inland did not include the Wellesley property in its discussions with Commerce about coverage for vacant properties, and Commerce did not agree to waive the vacancy exclusion with respect to the Wellesley property. The policy renewed again on September 1, 1990, and again the subject of the vacancy of the Wellesley property was not discussed. By the time of the fire in October, 1990, the property had been vacant for approximately seventeen months, and had been excluded from coverage under the terms of the policy (as twice renewed) for approximately fifteen months.

*Liability.* Inland does not appear to challenge the trial judge's conclusion that its failure to inquire about the vacancy of the Wellesley property fell below the standard of care applicable to its services to the plaintiffs. Instead, Inland argues that it cannot be held liable in contract (as compared to the plaintiffs' time-barred negligence claim), because it did not specifically

undertake with the plaintiffs to obtain coverage of vacant properties on the plaintiffs' behalf.

In a contract for professional services, the agreement between the parties embraces an obligation for the service provider to use "that skill and judgment which can be reasonably expected from similarly situated professionals." *Klein* v. *Catalano*, 386 Mass. 701, 718 (1982). Accordingly, an insurance broker's failure to perform to this standard in obtaining coverage for its client may support a claim for breach of contract. See *Campione* v. *Wilson*, 422 Mass. 185, 195-196 (1996) (insurance broker may be liable on contract theory for dereliction in obtaining coverage at limits requested by insured); *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 500-501 (1980) (admitted "technical error of judgment" by insurance broker supported inference of both negligence and breach of contract); *MacGillivary* v. *W. Dana Bartlett Ins. Agency of Lexington, Inc.*, 14 Mass. App. Ct. 52, 57 (1982) (broker could be liable for breach of implied term of brokerage arrangement by procuring, albeit unintentionally, a policy with an unlicensed insurer).[6]

Inland's argument that its failure to inquire into the vacancy of the Wellesley property cannot support a claim for breach of contract attempts to confine the parties' contract to the matters specifically discussed between the parties, to the exclusion of Inland's more general implied contractual obligation to comport with professional standards in the performance of its services on the plaintiffs' behalf. However, though the parties did not specifically discuss the procurement of coverage on vacant

---

[6]Implying into a contract for professional services an obligation to meet the standards of the applicable profession has the effect of allowing overlapping remedies in contract and in tort. As in the present case, the contract claim, governed by a longer statute of limitations, may accordingly remain viable even when a tort action on the same facts would be time-barred. We have acknowledged that effect in other contexts, without particular concern. See *Hendrickson* v. *Sears*, 365 Mass. 83, 84-85 (1974); *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 223 n.4 (1990). Where the Legislature has found reason to harmonize the limitations periods between the alternative forms of action, it has done so. *Hendrickson* v. *Sears*, 365 Mass. at 85. In any event, the fact that the same facts may support actions in both contract and tort does not eliminate other differences between the different forms of action, such as differing dates for the accrual of a claim, the nature and measure of recoverable damages, and the analysis of causation.

properties, that is the source of the plaintiffs' complaint, rather than a defense against it. As the trial judge found, Inland was aware that the policy issued by Commerce excluded vacant properties from coverage (unless specifically modified to provide coverage), yet failed to investigate the occupancy of the Wellesley property in executing the plaintiffs' request to obtain a renewal of coverage. The trial judge also found (based in part on the admission of Inland's president that it had an obligation when renewing the policy to inquire about the occupancy of each property scheduled under the policy) that Inland's failure to ascertain the occupancy of the Wellesley property fell below the standard of care Inland owed to the plaintiffs. Finally, the trial judge found that the plaintiffs could easily have obtained coverage of the Wellesley property despite its vacancy had Inland raised the issue. Inland's failure to investigate conditions it knew would invalidate coverage of the Wellesley property properly stands as a basis for its liability in contract.

Inland separately argues, based on *Baldwin Crane & Equip. Corp.* v. *Riley & Reilly Ins. Agency, Inc.,* 44 Mass. App. Ct. 29, 31-32 (1997), that it may not be held liable because it received no separate consideration, apart from ordinary commissions, to provide advice to the plaintiffs. While (as *Baldwin Crane* illustrates) certain types of advice may not fall within the scope of the duty owed by an insurance broker under an agreement to procure coverage, we believe for the reasons given above that the trial judge correctly concluded in the present case that Inland's contract with the plaintiffs included an undertaking to ascertain whether the properties scheduled for coverage were vacant (and thereby excluded from coverage) at the time of the policy renewal. Doing so fell within the ambit of the parties' agency arrangement even though it was not an expanded advisory agency arrangement of the nature described in *Baldwin Crane.*[7] See *ibid.*

*Damages.* The trial judge awarded damages based on the

---

[7]There is likewise no merit to Inland's contention that its breach did not cause the plaintiffs' loss. Inland bases that contention on its claim that the plaintiffs could have avoided loss if their mortgagee had pursued a claim under the mortgagee's policy, and applied the proceeds toward the mortgage loan secured by the Wellesley property. Even were we to assume that the mortgagee could successfully have pursued a claim for the loss of the vacant

replacement cost of the building destroyed by the fire. Since the plaintiffs' contract claim is based on Inland's failure to procure coverage, their damages are measured by the amount they could have recovered under the insurance policy had Inland properly procured it. See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 196 (1982). The policy provided that "Property which is not replaced within one (1) year after such loss shall be valued at the actual cash value at time and place of loss." The building destroyed by fire was not in fact replaced, but the plaintiffs argue that the failure to replace is attributable to the fact they did not receive proceeds to enable them to rebuild. Inland concedes that the plaintiffs would be entitled to replacement cost if they would have rebuilt if proceeds had been available. See *Hess* v. *North Pac. Ins. Co.*, 122 Wash. 2d 180, 182 (1993).

The trial judge made no finding that the plaintiffs would have rebuilt the building had proceeds been made available; indeed the evidence at trial was to the contrary. Capital's general counsel, Michael Sophocles, testified at trial that the plaintiffs would have used the insurance proceeds to provide additional security on the mortgage on the Wellesley property or to satisfy other cash needs of Capital. The trial judge found that the plaintiffs would have used the insurance proceeds to service the mortgage loan on the Wellesley property (which ultimately went into default and was foreclosed). That Capital had planned, before the fire, to relocate the wood-frame residential structure incident to prosecution of its proposed multi-family development does not establish that it would have rebuilt after the building was destroyed by fire. The trial judge found that the replacement cost of the building was $367,160, and awarded damages in that amount. However, the judge did not give any explanation for his use of replacement cost as a basis for determination of the plaintiffs' damages, and we find inadequate support in the record to support an award on that basis. The

Wellesley property under its separate policy, however, the mortgagee did not owe to the plaintiffs any obligation to do so. Accordingly, the plaintiffs could have had no basis to expect — or require — that the mortgagee would obtain insurance proceeds from the loss of the Wellesley property and apply them for the plaintiffs' benefit. The loss suffered by the plaintiffs by reason of the exclusion of the property from coverage under the plaintiffs' own policy cannot be based on the mortgagee's failure to recover on a separate policy.

trial judge also found that the Wellesley property had a value of approximately $350,000, but the judge made no finding as to the value of the building separate from the land on which it stood (and which remained following the fire). The damage award is accordingly vacated, and the matter is remanded for determination of the value of the building; upon determination of that amount the judgment shall be modified to conform to that value, plus interest.

*Interest.* The trial judge awarded interest on the damage award running from the date of the fire. However, the plaintiffs' loss arises not from the fire itself but from its inability to collect proceeds under the policy Inland procured on the plaintiffs' behalf. The plaintiffs cannot claim to have suffered a loss until they were deprived of benefits to which they would have been entitled had the policy provided coverage on the property. We look to the terms of the insurance contract to determine the date on which the plaintiffs were first deprived of the benefits they would have enjoyed, had Inland obtained the requested coverage.[8] See *United Cal. Bank* v. *Eastern Mountain Sports, Inc.*, 546 F. Supp. 945, 976-977 (D. Mass. 1987); *General Dynamics Corp.* v. *Federal Pac. Elec. Co.*, 20 Mass. App. Ct. 677, 687 (1985). Under the terms of the policy, the insurer was required to pay any claim within thirty days following the date on which the policyholder submits proof of loss. The record does not establish the precise date on which the plaintiffs (or Inland on their behalf) submitted their claim to Commerce, but it appears that the claim was submitted promptly following the fire. In any event, the judge found that Commerce advised Inland of its decision to deny coverage by November 30, 1990. On remand, the judge shall determine the date on which the plaintiffs submitted their claim under the policy, and interest on the revised damage award shall run from the date which is thirty days following that date.

*Conclusion.* The judgment imposing liability against Inland

---

[8]Though the claim arises from Inland's failure to procure coverage, Inland's failure lay not in its failure to purchase a policy but in its failure to take the steps necessary to obtain coverage of the Wellesley property under the policy it did purchase. We are accordingly able to examine the terms of the policy to determine with certainty the terms that would have applied to a claim for fire loss, had Inland obtained the requested coverage.

for breach of contract is affirmed. The matter is remanded for determination of damages on the basis of the value of the building destroyed. Prejudgment interest shall run on such damages, beginning on the date which is thirty days following the date on which the plaintiffs submitted a claim for coverage to Commerce.

*So ordered.*