Kern, Leila R., J.
This matter began as a collection action brought by the plaintiff, National Fire and Marine Insurance Company, against its policy holder, AT Equipment, Inc., to collect an additional $102,405 premium. AT subsequently filed the instant third-party action against Insurance Professionals of New England, Inc., and The Quaker Insurance Agency of Massachusetts, Inc. seeking indemnification from the third-party defendants for any amount it is ordered to pay National. ATs Complaint alleges causes of action for: declaratory judgment (Count I), negligence (Count II), misrepresentation (Count III), breach of contract (Count IV), and violation of G.L.c. 93A, §11 (Count V). The third-party defendants, Quaker and IPNE, now move for summary judgment on all counts. For the following reasons, these Motions for Summary Judgment are ALLOWED.
BACKGROUND
The relevant facts are taken from the summary judgment record in the light most favorable to the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
AT is a Massachusetts corporation based in Worcester that sells and rents hydraulic hammers that are attached to heavy construction equipment. Alexander Topolewski is President of AT and also manages the corporation with his wife, Cynthia Topolewski. Since 1998, IPNE has acted as ATs insurance broker, obtaining commercial general liability policies and other insurance products for the corporation. In 2003, after ATs insurer refused to renew its general liability policy, IPNE arranged for Quaker, a Massachusetts corporation, to obtain a quote from National, a non-admitted insurance company located in Omaha, Nebraska. In August of 2002, AT accepted the National quote and coverage was bound for 2003-2004.
*74 In order to renew ATs National policy for 2004-2005, IPNE filled-out and delivered to AT an ACORD insurance application and a handwritten Commercial General Liability insurance application. In correspondence accompanying these forms, IPNE requested that AT fill out certain sections of the applications and review the rest of the applications for correctness. The ACORD application contained a section titled “Schedule of Hazards.” The schedule was formatted as a table that contained column headings for risk classification, premium basis, rate and calculated premium. As completed by IPNE, the Schedule of Hazards showed AT to have annual gross sales of $10,300 for Contractor’s Equipment, and $92,300 for Machinery and Equipment.[2] The Commercial General Liability Application contained the same break-down of ATs annual gross sales. These figures approximated ATs annual gross sales during its first years in business, but the company’s annual gross sales had increased substantially since that time. Neither of the Topolewskis reviewed the applications for accuracy nor did they correct the erroneous gross sales numbers on either application. Additionally, Alexander signed the ACORD application and Cynthia signed the Commercial General Liability Application without realizing the forms considerably underreported ATs annual gross sales. The signature pages of both applications featured prominent “disclaimers” as to the truth and accuracy of the information given by the applicants. Based on the contents of the two applications, National renewed ATs policy for 2004-2005 and, in accordance with the calculations shown in the ACORD application’s Schedule of Hazards, assessed ATa $5,500 premium. The 2004-2005 National policy also contained an endorsement notifying AT that it would be assessed an annual minimum premium of $5,000 and that premium might be increased following an audit.
In December 2005, National notified AT it would be auditing the 2004-2005 policy. On August 3, 2006, National notified AT it had determined ATs annual gross sales for the period were $1,770,442 not $103,000 as shown on the form. Using the corrected sales figures, National calculated ATs 2004-2005 premium was $107,905. This premium was considerably higher than that charged by at least one other insurer for general commercial liability coverage.
National terminated ATs 2004-2005 policy, citing ATs lack of cooperation with its audit, and filed a claim to recover the unpaid premium. AT then filed the instant action against IPNE and Quaker seeking indemnification for the unpaid premium. IPNE and Quaker now move for summary judgment.
DISCUSSION
I. Standard of Review
A motion for summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles them to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). A party who does not bear the burden of proof at trial may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis. 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Declaratory Judgment (Count I)
In its complaint, AT requests that this court issue a declaratory judgment pursuant to G.L.c. 231A et seq. Specifically, AT would have this court issue a binding declaration determining: (1) whether IPNE and Quaker knew or should have known the gross sales figures as shown on ATs policy applications were incorrect; (2) whether IPNE and Quaker knew or should have known National charged higher premiums than some of its competitors, and whether they should have obtained quotations from less expensive insurers; (3) whether Quaker had a duly to AT with respect to the National policy; and (4) whether IPNE and Quaker must indemnify AT for any additional premium charged to it for the 2004-2005 National insurance policy. Apart from its reference to G.L.c. 231A et seq., AT provides no case law supporting its demands for declaratory judgment.
Declaratory judgment is only favored where a “case reduces to an issue of law without dispute as to the facts.” Sydney v. Comm’r of Corps.& Taxation, 371 Mass. 289, 295 (1976). Declaratory judgment is suitable “(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.” Boston’s Children First v. Boston Sch. Comm., 183 F.Sup.2d 382, 396 (D.Mass. 2002). “A declaratory judgment is, however, an inappropriate mechanism through which to address allegations of past harm.” Id.
In Count I, AT asks this court to determine what the parties knew, what was the nature of their relationships and what should be the ultimate holding of the case. These are factual determinations that cannot *75 be addressed by a declaratory judgment. Sydney, 371 Mass. at 295. Furthermore, Count I addresses allegations of past harm, and declaratory relief is therefore inappropriate. Boston’s Children First 183 F.Sup.2d at 396. Finally, this court has discretion to refuse declaratory relief where it would not terminate the controversy. Bd. Selectmen of Truro v. Outdoor Adver. Bd., 346 Mass. 754 (1964). For these reasons, IPNE and Quaker’s Motions for Summary Judgment as to Count I are ALLOWED.
III. Negligence (Count II)
AT alleges IPNE and Quaker owed AT a duty because they acted as its brokers in its dealings with National and they violated this duty by incorrectly preparing ATs applications and not informing AT of errors in the applications or of the premium rates charged by National. AT argues that as a result of IPNE and Quaker’s negligence it suffered damages of $102,405 in additional premium expenses.
‘To be liable for negligent conduct, one must have failed to discharge a duty of care owed to the plaintiff, harm must have been reasonably foreseeable, and the breach or negligence must have been the proximate or legal cause of the plaintiffs injury.” Christopher v. Father’s Huddle, 57 Mass.App.Ct. 217, 222 (2003). For the purpose of these summary judgment motions, this court assumes without deciding that Quaker and IPNE acted as AT has alleged, and that AT was injured as a result. Therefore, this court will only address whether the record contains sufficient evidence to create a triable issue of material fact as to whether Quaker or IPNE negligently breached a duty owed to AT.

The Status of IPNE and Quaker as Brokers or Agents

Generally, insurance brokers and agents perform different functions. An insurance broker is paid to help a customer with negotiations to obtain or renew insurance policies or their terms. Hudson v. Massachusetts Property Ins. Underwriting Assoc., 386 Mass. 450, 455 (1982). Therefore, a broker may be an agent of the insured, see e.g. Bicknell, Inc. v. Haylin, 9 Mass.App.Ct. 497, 500 (1980). An insurance agent, however, is a non-broker who, for compensation, “solicits insurance on behalf of any company, or transmits for a person other than himself an application for a policy of insurance ... to or from such company, or offers or assumes to act in the negotiation of any such policy or contract, or in the negotiation of its continuance or renewal.” Hudson, 386 Mass. at 455. An insurance agent, with the authority to bind coverage for the multiple underwriters with whom he works, acts as the insurer’s agent. See Merkel Service Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. 401, 406-07 (1988).
The record clearly shows IPNE was ATs insurance broker and it was paid to help AT obtain and renew its general commercial liability policy with National. IPNE filled out and submitted applications for AT and was compensated for its role in negotiating and placing ATs general commercial liability policy. Therefore, IPNE owed AT a duty as its broker discussed in more detail below.
Nothing in the record, however, supports ATs claim that Quaker was also its broker. The undisputed facts show IPNE, not AT, contacted Quaker for help obtaining a general commercial liability insurance quote from a non-admitted carrier. Quaker played no partin filling out ATs applications and merely forwarded them to National for consideration. National then reviewed ATs applications and granted Quaker the authority to offer IPNE a binding quote. Upon IPNE’s request, Quaker bound coverage with National, issued the policy to IPNE on behalf of National and collected the deposit premium directly from IPNE. At no point in the transaction did Quaker communicate directly with AT, negotiate on its behalf or aid it in filling out its applications. Based on these facts, this court holds that, for the purposes of this action, Quakerwas not ATs insurance broker, but rather an insurance agent acting on behalf of National. Furthermore, because Quaker owed it no duty, AT cannot show at trial that Quaker was negligent, and, therefore, Quaker’s Motion for Summary Judgment as to Count II is ALLOWED.

IPNE’s Duty as ATs Insurance Broker

Ordinarily, a broker owes the insured a duty to exercise reasonable skill and ordinary diligence. Hartford Nat'l Bank v. Universal Truck Leasing, 24 Mass.App.Ct. 626, 630 (1980). “The relationship between an insurance broker and the insured is not normally thought to be fiduciary in nature . . . absent ‘special circumstances’ of assertion, representation and reliance.” Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc, 44 Mass.App.Ct. 29, 32 (1997) (internal citations omitted), quoting Rapp v. Lester L. Burdick, Inc., 336 Mass. 438, 442 (1957). “An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.” Id. at 33.
The record, when viewed in the light most favorable to AT, does not contain sufficient evidence of “special circumstances of assertion, representation and reliance” from which a reasonable trier of fact could conclude that IPNE owed AT a fiduciary duty. Baldwin Crane & Equip. Corp. 44 Mass.App.Ct. at 32. AT has presented no evidence to contradict undisputed facts in the record showing that IPNE repeatedly advised AT to review and, if necessary, correct its insurance applications.[3] AT does not allege IPNE held itself out to AT as having expert knowledge of AT’s annual sales figures, or that AT provided IPNE with “compensation for consultation and advice apart from premiums *76 paid.” Id. Although AT claims to have relied upon IPNE’s promises to provide the “best products and services,” these representations were common “puff-ery”[4] and cannot be grounds for imposing a greater duty of care on IPNE.[5] Furthermore, AT does not allege the National policy was not the “best product” but only that it was overpriced. An insurance policy is not a fungible commodity and price alone cannot determine its quality. Therefore, IPNE did not owe AT a fiduciary duty, but rather a duty to exercise reasonable skill and ordinary diligence. Hartford Nat’l Bank, 24 Mass.App.Ct. at 630.
IPNE’s duty to exercise reasonable skill and ordinary diligence did not include a responsibility to ensure AT’s insurance applications were correctly completed or AT had read and understood the premium terms of the National policy. See Baldwin Crane & Equip. Corp., 44 Mass.App.Ct. at 31 (holding it was “not tenable to argue that [the insurer] had a duty to ensure that [the insured] understood the full import of the meaning of minimum premium” where there was no fiduciary duty). Therefore, AT has no reasonable expectation of proving at trial that IPNE was negligent and IPNE’s Motion for Summary Judgment as to Count II is ALLOWED.
IV.Misrepresentation (Count III)
AT alleges IPNE and Quaker made certain false representations that: (1) ATs insurance applications were properly prepared; (2) National charged reasonable premiums compared to its competitors; and (3) AT would pay a $5,500 premium for the 2004-2005 National policy. AT further contends it relied upon these misrepresentations in purchasing the National insurance policy and suffered $102,405.00 in damages when National assessed it an additional premium following the audit. The record contains no evidence Quaker made any of the representations AT alleges it made and, therefore, Quaker’s Motion for Summary Judgment as to Count III is ALLOWED.
“A defendant is liable for negligent misrepresentation if‘in the course of his business [he] supplies false information for the guidance of others in their business transactions’ on which the others justifiably rely, ‘if he fails to exercise reasonable care or competence in obtaining or communicating the information.’ ” Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235 (2007), quoting Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587 (1996).
The record viewed in the light most favorable to AT is insufficient to create a triable issue of material fact as to whether AT justifiably relied upon representations made by IPNE. The record contains no evidence to support ATs allegation IPNE represented the insurance applications correctly reflected “underlying information concerning the business of AT equipment.” To the contrary, it is undisputed IPNE asked AT to review the applications for correctness. Furthermore, as the party with the best opportunity to know its own sales figures, AT could not reasonably rely upon such a representation even if IPNE had made it. There is also no evidence in the record to support ATs allegation IPNE represented the rates charged by National were reasonable compared to its competitors. Finally, there is no merit to ATs claim IPNE represented the premium for the 2004-2005 National policy would be $5,500 or AT reasonably relied upon such a representation. The applications clearly show that the $5,500 premium was calculated based on ATs gross sales figures, and the terms of the policy explain the possibility that ATs premium might be adjusted following an audit. AT signed these documents and is presumed to have read and understood their contents. Bruno v. Bruno, 10 Mass.App.Ct. 918, 919 (1980). Therefore, even if IPNE had represented the National premium was limited to $5,500 AT knew or should have known otherwise and its reliance would not have been reasonable.
Viewing the record in the light most favorable to AT, a reasonable trier of fact could not conclude that AT justifiably relied upon a representation made by IPNE and, therefore, as a matter of law, IPNE’s Motion for Summary Judgment as to Count III is ALLOWED.
V.Breach of Contract (Count IV)
For its breach of contract claim, AT repeats the allegations contained in its misrepresentation claim. There is no evidence in the record from which a trier of fact could conclude Quaker and AT formed a contract containing the provisions AT alleges, therefore, Quaker’s Motion for Summary Judgment as to Count IV is ALLOWED.
ATs breach of contract claim against IPNE is also without merit. The record contains no evidence to support ATs allegation IPNE contracted to correctly complete ATs insurance applications. The undisputed facts show AT was asked to review the applications for their correctness and it apparently failed to do so. AT also argues IPNE violated an implied contract with AT by failing to use “that skill and judgment which can be reasonably expected from similarly situated professionals.” Capital Site Mgmt v. Inland Underwriters Ins. Agency Ltd., 61 Mass.App.Ct. 14, 17 (2004). However, Capital Site Mgmt addressed issues of coverage not the cost of coverage and is therefore inapposite. Id. Finally, AT cannot claim IPNE contracted to provide the 2004-2005 National policy for $5,500 when AT knew or should have known, based on the applications and the policy itself, this was not the case. Bruno, 10 Mass.App.Ct. at 918 (1980) (“[o]ne who signs awriting that is obviously a legal document is presumed to be fully aware of its term . . .”). Therefore, IPNE’s Motion for Summary Judgment as to Count IV is ALLOWED.
VI.Violation of G.L.c. 93A, §11 (CountV)
Count V is based upon Counts II, III and IV, for which this court has allowed Quaker and IPNE’s Motions for Summary Judgment. Because G.L.c. 93A, §11 claims must be dismissed when the underlying *77 claims are no long viable, Quaker and IPNE’s Motions for Summary Judgment as to Count V are ALLOWED.
ORDER
For all of the foregoing reasons, the Motions for Summary Judgment of the third-party defendants, Insurance Professionals of New England, Inc. and The Quaker Insurance Agency of Massachusetts, Inc., are ALLOWED as to all counts.

 A footnote to these entries, under the subtitle “Rating and Premium Basis,” read “GROSS SALES — PER $1,000/SALES.”

 With each renewal application, IPNE requested that AT review the applications for correctness. For example, in a facsimile to AT accompanying the 2004-2005 renewal applications, IPNE advised AT to “[p]lease review ALL questions for correctness and complete the areas specifically checked off.” Facsimile from Anna Armenti, IPNE to Cynthia and Alexander Topolewski, Aug. 19, 2004. (Opposition to the Motions for Summary Judgment, Exhibit SS.)

 Kabatchnick v. Hanover-Elm Bldg. Corp., 328 Mass. 341, 344 (1952) ("The law recognizes the fact that men will naturally overstate the value and qualities of the articles which they have to sell. All men know this, and a buyer has no right to rely upon such statements”).

 AT claims to have relied upon statements IPNE made in an annual marketing letter where IPNE stated: “[w]e take pride in delivering the best products and services to you, our clients.” Additionally, AT contends IPNE represented at all times that it would provide AT with “the best products and services.”